| Oficina de Asuntos Monopolísticos del Departamento de Justicia y el Estado Libre Asociado de Puerto Rico<br><br>Recurridos<br><br>v.<br><br>Abarca Health, LLC<br><br>Peticionaria | Certiorari<br><br>2025 TSPR 23<br><br>215 DPR ___ |
|---|---|

Número del Caso:  CC-2023-0773

Fecha:  13 de marzo de 2025

Tribunal de Apelaciones:

    Panel XI

Representantes legales de la parte peticionaria:

    Lcdo. Néstor M. Méndez Gómez
    Lcda. María D. Bertólez Elvira
    Lcdo. César T. Alcover Acosta
    Lcda. Carla S. Loubriel Carrión
    Lcda. Liza M. Ríos Morales

Oficina del Procurador General:

    Hon. Fernando Figueroa Santiago
    Procurador General

    Lcdo. Omar Andino Figueroa
    Subprocurador General

    Lcda. Sofía M. Cardona Rosa
    Procuradora General Auxiliar

Representantes legales de los *amicii curiae*:

    **Asociación de Farmacias de la Comunidad de Puerto Rico y Cooperativa de Farmacias Puertorriqueñas (COOPHARMA)**

    Lcdo. Luis D. Martínez Rivera
    Lcdo. José G. Díaz Tejera

Materia:  Derecho Administrativo – Foro judicial competente para revisar la adjudicación de querellas administrativas instadas al amparo de la *Ley Antimonopolística de Puerto Rico*; término prescriptivo para que la Oficina de Asuntos Monopolísticos del Departamento de Justicia presente una querella administrativa ante el Departamento de Asuntos del Consumidor, por infracciones al Art. 3 de la Ley.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oficina de Asuntos Monopolísticos del Departamento de Justicia y el Estado Libre Asociado de Puerto Rico

     Recurridos

        v.

Abarca Health, LLC

     Peticionaria

CC-2023-0773

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 13 de marzo de 2025.

Este recurso nos permite aclarar cuál es el foro judicial competente para revisar la adjudicación de querellas administrativas instadas al amparo de la Ley Antimonopolística de Puerto Rico, infra. A su vez, tenemos la oportunidad de pautar si existe un término prescriptivo para que la Oficina de Asuntos Monopolísticos del Departamento de Justicia presente una querella administrativa ante el Departamento de Asuntos del Consumidor (DACo), por infracciones al Art. 3 de la Ley Antimonopolística, infra.

Por los fundamentos que se pormenorizan a continuación, concluimos que es el Tribunal de

Apelaciones y no el Tribunal de Primera Instancia el foro designado para la revisión judicial de la adjudicación de querellas administrativas por métodos injustos de competencia y prácticas injustas o engañosas. Asimismo, resolvemos que las acciones administrativas al amparo del Art. 3 de la Ley Antimonopolística, infra, están sujetas al periodo de prescripción de cuatro años preceptuado en el Art. 11 del mencionado estatuto.

I

El 16 de diciembre de 2022, la Oficina de Asuntos Monopolísticos (OAM) presentó una querella ante DACo contra Abarca Health, LLC (ABARCA) por infracciones al Art. 3 de la Ley Antimonopolística, infra.

En esencia, la OAM indicó que desde el año 2018 Abarca se convirtió en el manejador exclusivo de la cubierta de beneficios de farmacia de Triple-S *Medicare Advantage* y su línea comercial de negocios. Dentro de este periodo, el 21 de septiembre de 2018 Abarca remitió una serie de misivas a su red de farmacias en las que, alegadamente incluyó representaciones falsas para justificar modificaciones en sus tarifas. En particular, Abarca expresó que había llevado a cabo un análisis exhaustivo de mercado y que las enmiendas tarifarias eran consistentes con ese estudio. La OAM alegó que Abarca no realizó el estudio. Arguyó que la declaración era engañosa e inducía al comerciante a error. Por tal motivo, la OAM solicitó a DACo que declarara que la conducta alegada constituyó una práctica o acto injusto o engañoso en

el comercio, así como un método injusto de competencia. Como remedio por la presunta infracción, la OAM peticionó que DACo impusiera multas de hasta $5,000 por cada farmacia a la que se le envió el documento con la declaración en cuestión.

Sucesivamente, Abarca presentó ante DACo su contestación a la querella. En síntesis, solicitó la desestimación por falta de jurisdicción, insuficiencia de las alegaciones y prescripción. En cuanto al asunto de prescripción, Abarca especificó que la querella debía desestimarse al amparo del Artículo 11 de la Ley Antimonopolística, infra, que provee un término prescriptivo de cuatro años para iniciar una acción penal por la infracción de sus disposiciones.

Por su parte, la OAM presentó una oposición a la solicitud de desestimación, en la que se allanó al planteamiento de que la querella administrativa estaba sujeta al término prescriptivo de cuatro años. No obstante, la OAM adujo que la reclamación no estaba prescrita pues, al amparo de la teoría cognoscitiva del daño, no fue hasta el 17 de diciembre de 2018 que —a través de un requerimiento de información— advino en conocimiento de las alegadas declaraciones engañosas emitidas por Abarca. Así, expresó que el plazo para presentar la querella comenzó a decursar a partir de esa última fecha.

Luego de varios trámites procesales, DACo emitió una resolución en la cual declaró no ha lugar varias mociones, incluida la solicitud de desestimación que nos ocupa. En la

resolución no se discutieron los fundamentos específicos para denegar la desestimación. Inconforme, Abarca presentó una moción de reconsideración que permaneció sin atender por parte de DACo.

Como consecuencia, Abarca presentó un recurso de revisión judicial ante el Tribunal de Primera Instancia y otro ante el Tribunal de Apelaciones. En esa misma fecha, Abarca presentó ante el foro intermedio una moción informativa en la que señaló que el Artículo 3(d) de la Ley Antimonopolística, infra, preceptúa que las solicitudes de revisión de cualquier determinación adversa deben presentarse ante el Tribunal de Primera Instancia. Por ello, solicitó que se refiriera la adjudicación del recurso a dicho foro. En la alternativa, solicitó que se aclarara la norma sobre ese particular.

Tras concedérsele un tiempo para expresarse, la OAM presentó una moción en la que argumentó que, para fines del proceso de revisión judicial, las disposiciones de la Ley de Procedimiento Administrativo Uniforme (LPAU), infra, prevalecen frente a las de la Ley Antimonopolística, infra, porque la LPAU fue la última ley en aprobarse. En consecuencia, aseveró que el Tribunal de Apelaciones era el foro competente para revisar las decisiones administrativas finales sobre querellas surgidas al amparo de la Ley Antimonopolística, infra.

El Tribunal de Apelaciones notificó una resolución en la que desestimó el recurso de revisión por falta de

jurisdicción. El foro intermedio concluyó que, conforme a la LPAU, el dictamen no era revisable porque constituía una determinación interlocutoria de la agencia y no una decisión final.

Nuevamente inconforme, Abarca recurrió ante nos mediante un recurso de *certiorari* y una moción en auxilio de jurisdicción. En síntesis, Abarca afirmó que la Ley Antimonopolística, infra, es una ley de carácter especial y sus disposiciones prevalecen sobre las de la LPAU. Por eso, arguyó que la revisión judicial de las determinaciones administrativas que nos conciernen debía efectuarse en el Tribunal de Primera Instancia, según establecido en el Art. 3(d) de la Ley Antimonopolística, infra.

De igual modo, Abarca nos indicó que ante la incertidumbre sobre cuál es el foro adecuado para entender en el asunto, presentó simultáneamente un recurso de revisión ante el foro primario y otro ante el Tribunal de Apelaciones. No obstante, conviene aclarar que la resolución de la cual recurre ante nos es la determinación emitida por el foro intermedio. Si bien recurrió de la resolución del Tribunal de Apelaciones, afirmó que el Tribunal de Primera Instancia ha mantenido paralizado el recurso ante sí hasta que emitamos una determinación al respecto. Evaluado el asunto, expedimos el recurso y paralizamos los procedimientos ante DACo.

Posteriormente, la OAM presentó su alegato por conducto de la Oficina del Procurador General. En suma, argumenta que

la revisión judicial de las determinaciones de DACo sobre querellas por métodos injustos de competencia o prácticas engañosas se rige por las disposiciones de la LPAU. Añade que a pesar de que la Ley de Asuntos Antimonopolísticos, infra, es de carácter especial, esta es de aprobación anterior al estatuto de procedimiento administrativo uniforme. Según el criterio de la OAM, dada la incompatibilidad entre el texto de ambas piezas legislativas, la decisión de cuál prevalece debe basarse en un análisis de temporalidad, pues por mandato legislativo expreso, la LPAU introdujo un sistema de revisión uniforme para todas las agencias sujetas a su aplicación. Consecuentemente, a juicio de la OAM el recurso debe ser atendido por el Tribunal de Apelaciones, tal y como establece la LPAU.

Por otra parte, y en lo que concierne al curso de acción del Tribunal de Apelaciones, la OAM afirma que dicho foro actuó correctamente al desestimar el recurso de revisión debido a que la determinación recurrida es de naturaleza interlocutoria y, por tanto, no revisable. Asimismo, arguye que el recurso no consignó circunstancia alguna que amerite la revisión excepcional. En la alternativa, la OAM plantea que si este Tribunal concluyera que la determinación es revisable, a modo de excepción, el curso procesalmente adecuado sería devolver el caso al foro intermedio para que efectúe la revisión judicial.

Finalmente, respecto a la determinación en los méritos sobre la prescripción de la querella, la OAM asevera que este asunto requiere evaluar otros elementos fácticos. De esta manera arguye que DACo, luego de denegar la solicitud de desestimación de Abarca, podía tomar en consideración el hecho de que la OAM advino en conocimiento de las comunicaciones engañosas luego de recibir las respuestas a un requerimiento de información. De igual forma, señala que DACo podía evaluar la prueba que apuntaba al hecho de que muchas farmacias continuaron firmando contratos con Abarca, luego de que esta emitiera las declaraciones aludidas, lo que, a su entender, afecta la defensa de prescripción.

Por otra parte, la Asociación de Farmacias de Puerto Rico y la Cooperativa de Farmacias de la Comunidad (COPHARMA) comparecieron en calidad de amigos de la corte. En lo pertinente, expresaron estar de acuerdo con la OAM en cuanto a que las disposiciones de la LPAU respecto a la revisión judicial uniforme ante el Tribunal de Apelaciones desplazan lo preceptuado en el Art. 3 de la Ley Antimonopolística, _infra_. En lo referente al tema de prescripción, los amigos de la corte plantean que las acciones en equidad del gobierno en casos de leyes de monopolios no prescriben. En la alternativa, arguyen que si la facultad de imponer multas estuviera prescrita, DACo debe seguir reteniendo jurisdicción para adjudicar los remedios en equidad que correspondan, pues estos no prescriben.

Expedido el auto y con el beneficio de la comparecencia de las partes, procedemos a disponer de la controversia.

II

### A. *Revisión judicial de determinaciones administrativas al amparo de la Ley Antimonopolística*

La Ley Núm. 77 de 25 de junio de 1964, según enmendada, conocida como la Ley Antimonopolística de Puerto Rico, 10 LPRA sec. 257, *et seq.*, se aprobó para proteger al pueblo y asegurar los beneficios de la libre competencia. Esta pieza legislativa pretende disuadir la concentración desmesurada del poder económico en unas pocas personas o entidades. Véase, Exposición de motivos de la Ley Núm. 77, supra.

El estatuto contempla distintos mecanismos procesales para vindicar sus garantías y prevenir, detener o sancionar la conducta proscrita. En lo aquí pertinente, la Ley Antimonopolística, supra, prescribe un andamiaje procesal que permite canalizar por la vía administrativa los métodos injustos de competencia. Art. 3 de la Ley Núm. 77, supra, 10 LPRA sec. 259. En consonancia, la OAM —adscrita al Departamento de Justicia de Puerto Rico— tiene la autoridad para presentar y tramitar querellas administrativas ante DACo con el objetivo de prevenir, evitar y detener los métodos injustos de competencia, así como las prácticas injustas o engañosas en el comercio. Art. 3(c)(a) de la Ley Núm. 77, supra.

El esquema de revisión judicial que preceptúa la ley —y que es objeto de disputa en esta ocasión— dispone:

La Oficina de Asuntos Monopolísticos o la parte querellada cuando estén afectados por una decisión del Departamento de Asuntos del Consumidor tendrán derecho a la revisión judicial en el Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico. **La solicitud de revisión deberá ser radicada ante el Tribunal de Primera Instancia dentro de los treinta (30) días a partir de la fecha de la notificación de la referida decisión.** Art. 3(d) de la Ley Núm. 77, supra, 10 LPRA sec. 259(d).

Al analizar el historial legislativo de la Ley Núm. 77, supra, notamos que el texto aprobado inicialmente en el año 1964 no contemplaba la jurisdicción de DACo para recibir querellas administrativas ni la designación del Tribunal de Primera Instancia como foro revisor de las decisiones administrativas. En ese contexto, fue en 1978 que mediante la Ley Núm. 72 de 23 de junio de 1978, 78 LPR 256, la Asamblea Legislativa: (1) autorizó a la OAM a presentar querellas ante DACo; (2) le concedió jurisdicción a DACo para dirimir las querellas e imponer sanciones, y (3) estableció el trámite para la revisión judicial de determinaciones administrativas.

A la luz de lo anterior, desde 1978 la Ley Antimonopolística, supra, textualiza que los recursos de revisión judicial deberán presentarse ante el Tribunal de Primera Instancia. Art. 3(d) de la Ley Núm. 77, supra. No obstante, este artículo provoca un choque irremediable con el mecanismo uniforme de revisión judicial ante el Tribunal de Apelaciones instaurado con posterioridad, por la Ley de Procedimiento Administrativo Uniforme, infra, la cual dispone que será el Tribunal de Apelaciones el foro

competente para la revisión judicial de determinaciones administrativas.

En términos de jerarquía estatutaria, es principio de hermenéutica que una ley especial prevalece sobre una ley de carácter general. Com. Electoral PPD v. Com. Electoral PNP, 205 DPR 559 (2020). De igual modo, las leyes solo pueden enmendarse o derogarse por una ley posterior. Art. 5 del Código Civil de 1930, 31 LPRA ant. sec. 5. La derogación de la ley puede ser expresa o tácita. Íd.

Sin embargo, se entiende que una disposición de ley de carácter general *no* puede prevalecer o derogar un precepto contenido en una ley especial, *salvo que* tal derogación se consigne expresamente. Com. Electoral PPD v. Com. Electoral PNP, supra, pág. 579; A.J. Tristani, Sucrs., Inc. v. Municipio de Mayagüez, 76 DPR 758 (1955). Como regla general, la derogación tácita de las leyes no es favorecida en nuestro ordenamiento. Gobierno Ponce v. Caraballo, 166 DPR 723 (2006). Ahora bien "el asunto de si una ley posterior deroga tácitamente una ley anterior es siempre una cuestión que depende de la voluntad del legislador, que será determinada por una comparación de ambos textos, en busca de la certeza de que éstos son irreconciliables y que no pueden subsistir conjuntamente". Departamento de Hacienda v. Telefónica, 164 DPR 195 (2005).

En vista de que nos encontramos ante dos disposiciones legislativas en conflicto, es nuestro deber resolver cuál estatuto prevalece.

**B. *Esquema de revisión administrativa al amparo de la LPAU y la ley de la Judicatura***

El mecanismo de revisión judicial uniforme se conceptualizó con miras a delimitar el ejercicio de discreción de las agencias y a procurar que estas desempeñen sus funciones conforme al mandato de ley. Simpson, Passalacqua v. Quirós, Betances, 2024 TSPR 64, 214 DPR __ (2024); Mun. de San Juan v. J.C.A., 149 DPR 263, 279 (1999).

En 1998, la Asamblea Legislativa identificó que existía un problema de falta de cohesión en el proceso decisional administrativo, en gran medida atribuible a la creación de un centenar de departamentos o agencias con procedimientos exclusivos. Véase, Exposición de motivos de la Ley Núm. 170 de 12 de agosto de 1988 (derogada). En atención a esa realidad, se diseñó un sistema uniforme para estructurar los procedimientos de investigación, reglamentación, adjudicación y licenciamiento de todas las agencias cubiertas por la ley. Íd.

Actualmente, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.*, es el cuerpo legislativo que rige de manera uniforme los procesos de revisión judicial. Pese a que el estatuto vigente es de relativa reciente aprobación, conviene aclarar que sus disposiciones son fieles al modelo de revisión uniforme adoptado originalmente por su antecesora, la derogada Ley Núm. 170, supra.

Como preámbulo al andamiaje procesal de revisión judicial, la LPAU expresa categóricamente que "[l]as disposiciones de esta Ley serán aplicables a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos **que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión**". (Negrilla suplida). Sec. 4.1 de la Ley Núm. 38-2017, 3 LPRA sec. 9671. De igual modo, conforme a la Sección 4.2 de la LPAU, supra: "[l]a revisión judicial aquí dispuesta será el recurso exclusivo para revisar los méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal emitida al amparo de este capítulo".

En sintonía con lo expuesto, el Profesor Demetrio Fernández indica que la LPAU adoptó un procedimiento de revisión judicial "uniforme para todas las agencias cubiertas por la ley y además **exclusivo y excluyente**". (Negrilla suplida) D. Fernández Quiñones, *Derecho Administrativo y la Ley de Procedimiento Administrativo Uniforme,* 2da ed., Bogotá, Ed. Forum, 2001, pág. 735. "Es de notar que la Ley de la Judicatura según enmendada mantuvo el traslado del Tribunal Supremo y del Tribunal de Primera Instancia al Tribunal de Apelaciones [de] todas las revisiones judiciales de dictámenes y disposiciones administrativas de las agencias cubiertas por la [LPAU]". Íd., pág. 671.

Para dilucidar el asunto de competencia que nos atañe, hay que prestar especial atención a las reformas del sistema judicial que propiciaron la creación del Tribunal de Apelaciones, instituido por primera vez en 1992. Ley Núm. 21 de 13 de julio de 1992, 92 [Parte 1] LPR 130. Este foro fue reestructurado en varias ocasiones. Desde 1994, la Ley de la Judicatura estableció la competencia del —en aquel entonces— llamado Tribunal de Circuito de Apelaciones para la revisión judicial de las determinaciones de las agencias administrativas, de conformidad con los postulados de la LPAU. Plan de Reorganización Núm. 1(a) de 28 de julio de 1994, según enmendado, conocido como la Ley de la Judicatura de 1994, 4 LPRA ant. sec. 22j.

En el caso *Farmacias Moscoso, Inc. v. K-mart Corp.*, explicamos que "[l]a Ley de la Judicatura de Puerto Rico de 1994 llevó a cabo una abarcadora reorganización del sistema judicial que conllevó una redistribución de las competencias de los tribunales a los distintos niveles." Farmacias Moscoso, Inc. v. K-mart Corp., 138 DPR 497, 506-507 (1995). De igual modo, explicamos que al aprobarse la LPAU estaba vigente un esquema de revisión judicial que contemplaba la revisión por el Tribunal Superior de las determinaciones administrativas de las agencias. Íd., pág. 507. No obstante, sentenciamos que **"la Ley de la Judicatura de Puerto Rico de 1994 enmendó tácitamente la Ley de Procedimiento Administrativo Uniforme y todas las leyes que disponían sobre la revisión judicial de las decisiones**

**administrativas** en todo aquello en que éstas fuesen incompatibles con la reorganización y redistribución de competencias allí establecidas". (Negrilla suplida). Íd., págs. 507-508. Al resolver esto, contemplamos que las derogaciones tácitas no son favorecidas en nuestro ordenamiento. No obstante, nos vimos compelidos a reconocer "una derogación tácita porque los preceptos de **la última voluntad legislativa** son tan irreconciliables con la anterior que ambas no pueden regir conjuntamente". Farmacias Moscoso, Inc. v. K-mart Corp., supra, pág. 510.

En sintonía, posteriormente manifestamos que "la competencia del Tribunal de Apelaciones para efectuar la revisión de las determinaciones administrativas, en su función adjudicativa, salvo se disponga lo contrario en una ley posterior, está regulada por la Sec. 4.2 de la LPAU". Fuentes Bonilla v. ELA *et al.*, 200 DPR 364, 380 (2018). Es decir, conforme con lo antes discutido, la LPAU desplaza toda disposición estatutaria que contravenga este principio de competencia, salvo que sea una ley posterior la que incluya un postulado en contrario. En otras palabras, el análisis de cuál estatuto debe aplicar en caso de incongruencia con la LPAU es esencialmente uno de temporalidad. Esto se justifica en la medida que, si una ley posterior incluye un postulado distinto, se puede deducir la intención legislativa de establecer un curso de acción diferente.

III

Culminada la labor de exégesis de los estatutos en controversia, nos vemos precisados a resolver de forma definitiva cuál es el foro competente para revisar las determinaciones finales de DACo que surjan del Art. 3 de la Ley Antimonopolística, supra.

Recordemos que en este caso, ante la incertidumbre, Abarca presentó dos recursos de revisión; uno en el Tribunal de Primera Instancia y otro en el Tribunal de Apelaciones. Abarca manifiesta que el recurso presentado ante el foro primario permanece paralizado en espera de nuestra decisión. Ahora bien, aclaramos que ante nuestra consideración únicamente se encuentra la resolución del foro intermedio.

En lo sustantivo, Abarca argumenta que por ser la Ley Antimonopolística, supra, de carácter especial, debe prevalecer frente a las disposiciones de la LPAU. En cambio, la OAM sostiene que en vista de que la Ley Antimonopolística se aprobó con anterioridad a la LPAU, los procesos de revisión judicial uniforme son aplicables.

Conforme a los fundamentos jurídicos que anteceden, hoy resolvemos que es el Tribunal de Apelaciones y no el Tribunal de Primera Instancia, el foro llamado a revisar judicialmente las determinaciones adjudicativas por violaciones del Art. 3 de la Ley Antimonopolística, supra. Esto es así porque las disposiciones de la LPAU desplazan el texto del Art 3(d) de la Ley Núm. 77, supra.

En este caso, tenemos la expresión afirmativa del legislador de que el proceso de revisión judicial uniforme de la LPAU es exclusivo y excluyente para todas las agencias cobijadas por la ley. Sec. 4.2 de la Ley Núm. 38-2017. En consecuencia, "la [LPAU] sustituyó los procedimientos de las agencias que sean incompatibles con sus preceptos y ordenó el manejo de los asuntos administrativos de manera consecuente con sus disposiciones". Perfect Cleaning v. Cardiovascular, 162 DPR 745, 757 (2004). Nótese que en este caso, DACo es una agencia cobijada por la LPAU.

A la luz de lo anterior, queda paladinamente claro que el proceso de revisión ante el foro intermedio toma precedencia frente a cualquier provisión de una ley de aprobación anterior a la LPAU que sea incompatible. En ese sentido, aquí el análisis de temporalidad de la ley cobra preeminencia frente al de especialidad.

En este caso, el Art. 3(d) de la Ley Antimonopolística, supra, que provee para la revisión de las decisiones de DACo en el Tribunal de Primera Instancia se aprobó en 1978. Nótese que en el año 1978 no existía la LPAU y mucho menos un Tribunal de Apelaciones. No es entonces raro que se le delegara al Tribunal de Primera Instancia la facultad de revisión.

No obstante, el texto legislativo en discusión no se ajusta al esquema de revisión judicial vigente. Por lo tanto, reiteramos que las decisiones finales de DACo sobre querellas administrativas por violaciones del Art. 3 de la

Ley Antimonopolística, _supra_, son revisables ante el Tribunal de Apelaciones.

Superado este escollo, procedemos a resolver el segundo señalamiento de error invocado por Abarca. A esos fines, nos corresponde evaluar si el Tribunal de Apelaciones erró al declararse sin jurisdicción para revisar —de forma interlocutoria— los méritos de la defensa de prescripción de la acción administrativa.

IV

### A. *Prescripción*

El Art. 1861 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 5291, establecía que "[l]as acciones prescriben por el mero lapso del tiempo fijado por la ley". La prescripción es un asunto de derecho civil sustantivo y no procesal, que responde al interés público de brindarle certeza a las relaciones jurídicas. SLG García-Villega v. ELA _et al._, 190 DPR 799, 812 (2014); S.L.G. Serrano-Báez v. Foot Locker, 182 DPR 824, 831 (2011); Pereira Suárez v. Jta. Dir. Cond._, 182 DPR 485 (2011); Arce Bucetta v. Motorola, 173 DPR 516, 537 (2008).

Nuestro ordenamiento jurídico parte de le premisa de que las reclamaciones válidas deben ejercerse oportunamente. Birriel Colón v. Econo y otro, 213 DPR 80 (2023). De esta forma, se evitan las consecuencias de la resucitación de reclamaciones viejas, como la pérdida de evidencia, la pérdida de testigos o la dificultad para contactarlos y la memoria imprecisa. SLG García-Villega v. ELA _et al.,_ supra,

pág. 813; <u>Arce Bucetta v. Motorola</u>, <u>supra</u>, pág. 536; <u>Culebra Enterprises Corp. v. E.L.A</u>, 127 DPR 943, 950 (1991).

**B. *Requisito de finalidad de la acción administrativa***

La LPAU preceptúa que la parte adversamente afectada por una orden o resolución final de una agencia puede instar un recurso de revisión judicial, siempre y cuando haya agotado todos los remedios provistos por el organismo administrativo correspondiente. Sec. 4.2 de la Ley Núm.38-2017.

De ordinario, las determinaciones interlocutorias de las agencias no son susceptibles de revisión judicial. Sec. 4.2 de la Ley Núm. 38-2017. Sobre estas determinaciones puede formularse un señalamiento de error en el recurso de revisión de la decisión final de la agencia. <u>Íd</u>. Sin embargo, hemos expresado que el requisito de finalidad de la acción y la doctrina de agotamiento de remedios administrativos generalmente se benefician de las mismas excepciones pues, aunque son conceptos diferentes, tienen un alcance análogo. <u>Procuradora Paciente v. MCS</u>, 163 DPR 21, 38 (2004). De manera que se puede preterir el trámite administrativo cuando: (1) el remedio sea inadecuado; (2) exigir su agotamiento ocasionaría un daño irreparable y en el balance de intereses no se justifique agotar los remedios; (3) se alega una violación sustancial de derechos constitucionales; (4) sería inútil el agotamiento de los remedios por la dilación excesiva en el proceso; (5) hay un caso claro de falta de jurisdicción, y (6) el asunto es

estrictamente de derecho y no requiere pericia administrativa. Sec. 4.3 de la LPAU, 3 LPRA sec. 9673.

En cuanto a las cuestiones de derecho, es importante añadir que, "[e]l tribunal no está atado por las interpretaciones que de la ley haga la agencia". D. Fernández, *op. cit.*, pág. 723. Asimismo, este Tribunal ha resuelto que la excepción relativa a cuestiones de estricto derecho versa sobre situaciones de interpretación estatutaria que son de la pericia del foro judicial. Procuradora Paciente v. MCS, supra, pág. 37.

De igual forma, en lo respectivo a la excepción por falta de jurisdicción de la agencia hemos dicho que "[d]icha doctrina parte de la premisa que si la agencia no tiene jurisdicción, su actuación es *ultra vires* y es innecesario agotar los remedios provistos. "Además, cuando se trata de un caso claro de falta de jurisdicción, el asunto es enteramente de la competencia judicial". J. Exam. Tec. Med. v. Elías *et al.*, 144 DPR 483, 492 (1997). Así pues, no se obtiene ningún beneficio y se le ocasiona un daño irreparable al litigante que es obligado a culminar un proceso ante una agencia, cuando el organismo claramente carece de jurisdicción para atender el asunto. Íd. Sin embargo, cuando la cuestión jurisdiccional no está tan clara, es adecuado compeler el agotamiento de remedios administrativos. Íd.

> Cónsono con lo anterior, este Tribunal ha adoptado tres criterios que se utilizarán ante un señalamiento de ausencia de jurisdicción de la agencia administrativa. En primer lugar, se debe considerar el riesgo de que se ocasione un daño irreparable si el tribunal pospone su intervención.

En segundo lugar, debemos evaluar el grado de claridad con que surja la carencia o tenencia de jurisdicción. En tercer lugar, debemos considerar la pericia que tenga la agencia para dilucidar las cuestiones jurisdiccionales. AAA v. UIA, 200 DPR 903 (2018).

V

Los fundamentos que sirven de base a la doctrina de finalidad de la acción administrativa están predicados en evitar interrupciones y dilaciones en la adjudicación de la controversia en su fondo. Sin embargo, por sus implicaciones, la defensa de prescripción, debidamente formulada y bien fundada, debe ser atendida como cuestión previa a la de fondo. Nótese que se trata de una figura jurídica que supone la extinción del derecho a ejercitar una acción. En esa tesitura, si el tribunal tiene ante sí alegaciones suficientes que revelen una controversia genuina sobre prescripción de una querella administrativa, este asunto es revisable judicialmente de forma interlocutoria. Ahí nos encontramos ante una controversia de derecho que no requiere de la pericia administrativa.

En este caso, ante el planteamiento oportuno y fundado de prescripción, procedía de manera excepcional la revisión judicial de la determinación administrativa en cuestión. Por consiguiente, erró el Tribunal de Apelaciones al concluir que no tenía jurisdicción para emprender la revisión de la determinación interlocutoria de DACo.

Esta Curia nunca se ha expresado sobre la posible aplicabilidad de un término prescriptivo para presentar

querellas administrativas al amparo de la Ley Antimonopolística, supra. Sin embargo, se trata de un asunto que ha suscitado varias controversias en el foro intermedio y que ha generado decisiones contradictorias. Ante ese escenario, como foro de última instancia, nos corresponde proveer una respuesta definitiva a esta interrogante de derecho.

VI

### A. *Historial y disposiciones de la Ley Antimonopolística de Puerto Rico*

La Ley Antimonopolística de Puerto Rico se inspiró en el modelo regulatorio federal sobre prácticas monopolísticas y competencia desleal. En ese sentido, nuestro estatuto esencialmente incorporó el esquema legislativo interrelacionado entre la *Sherman Antitrust Act of 1980*, 15 U.S.C. secs. 1-38; la *Clayton Antitrust Act of 1914*, 15 U.S.C. secs. 12-27 y la *Federal Trade Commission Act*, 15 U.S.C. secs. 41-58. (FTC Act).

El Art. 2 de la Ley Antimonopolística, 10 LPRA sec. 258, cuyo texto declara ilegal el acto o conspiración para restringir los negocios y el comercio en Puerto Rico, se inspiró en la Sherman Act, supra. Similarmente, el Art. 5 del estatuto local, que regula las fusiones y adquisiciones para evitar monopolios, tiene su origen en la Clayton Act, supra. Art. 5 de Ley Núm. 77, supra, 10 LPRA sec. 261.

Por otro lado, y en lo medular a esta controversia, el texto del Art. 3 de la Ley Núm. 77, supra, se inspiró en la FTC Act. Como bien señalamos anteriormente, este artículo de

ley está diseñado para canalizar por la vía administrativa lo concerniente a los métodos injustos de competencia y las prácticas engañosas. Sobre este particular, primeramente, el Art. 3(a) declara que "[l]os métodos injustos de competencia, así como las prácticas o actos injustos o engañosos en los negocios o el comercio, por la presente se declaran ilegales". Art. 3(a) de la Ley Núm. 77, supra, 10 LPRA 259(a). Su homóloga federal enuncia de forma similar: "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful". Sec. 5(a) de la FTC Act, 15 U.S.C. sec. 45(a)(1).

Sin embargo, la Ley Antimonopolística local no delimitó las prácticas que pueden constituir métodos injustos o prácticas engañosas y que, por consiguiente, son ilegales. Por el contrario, le delegó a la OAM la facultad de proscribir actos o prácticas específicas mediante reglas y reglamentos. Art. 3(b) de la Ley Núm. 77, supra, 10 LPRA 259(b).

Cónsono con esta disposición, se creó el Reglamento Núm. 2648 de 29 de mayo de 1980, conocido como *Reglamento sobre competencia justa Núm. VII proscribiendo prácticas y métodos injustos de competencia y enumerando actos que constituyen métodos injustos de competencia* (Reglamento Núm. 2648). Este Reglamento contiene una lista no exhaustiva de actos o métodos de competencia injusta. A su vez, en su Art. III denominado "Métodos injustos de competencia" prohíbe,

entre otras: (1) toda violación —o conducta análoga a una violación— de cualquier legislación antimonopolística que aplique a Puerto Rico; (2) **cualquier conducta que viole las disposiciones estatutarias de carácter civil o penal** que regulan o afectan directa o indirectamente, el comercio, los negocios o la competencia, y (3) cualquier conducta que viole el espíritu de la ley antimonopolística. Art. III del Reglamento Núm. 2648.

Para ejecutar el mandato estatutario, mediante el inciso (c) del Art. 3 de la Ley Núm. 77, supra, el legislador habilitó un mecanismo de adjudicación administrativa. Por tratarse de un precepto crucial para la resolución de la controversia, citamos *in extenso*:

> Sin menoscabo de la facultad de recurrir a los remedios autorizados por el Artículo 13 de esta ley, la Oficina de Asuntos Monopolísticos podrá radicar y tramitar querellas administrativas en el Departamento de Asuntos del Consumidor para **prevenir, evitar y detener las violaciones** al inciso (a) de este artículo o los reglamentos aprobados de conformidad al inciso (b) del mismo. Cuando la parte contra quien se establezca la querella haya sido debidamente notificada de la querella incoada en su contra, el Departamento de Asuntos del Consumidor procederá, tan pronto sea posible, a celebrar la vista y resolver el caso otorgando el remedio más adecuado conforme a las particularidades de la querella. (Negrilla suplida). Íd., 10 LPRA sec. 259(c).

Del artículo citado resaltan varios puntos que ameritan discusión. Primero, queda claro que la OAM no tiene facultad de adjudicar violaciones a la ley, sino de presentar querellas administrativas ante DACo. Véase, Aguadilla Paint Center v. Esso, 183 DPR 901 (2011). En este aspecto, la ley local dista del texto de su contraparte federal, que dotó a

la FTC de poderes adjudicativos. Sec. 5 de la FTC Act, 15 U.S.C. sec. 45(b).

Segundo, del texto citado surge que la autoridad de presentar una querella no menoscaba el poder de la OAM de instar un procedimiento de *injunction* ante el Tribunal de Primera Instancia, según vislumbrado en el Art. 13(a) de la Ley Núm. 77, supra, 10 LPRA sec. 269(a).

Tercero, la declaración de propósitos del Art. 3(c) de la Ley Núm. 77, supra, revela que la facultad de la OAM de presentar querellas administrativas persigue **prevenir, evitar y detener** las violaciones del mencionado artículo. Para contextualizar esta declaración de propósitos, nos dimos a la tarea de analizar la exposición de motivos de la Ley Núm. 72 de 23 de junio de 1978, mediante la cual se incorporó el inciso (c) al Art. 3 de la Ley Antimonopolística, supra. El texto legislativo resulta revelador:

> El objetivo final de nuestra legislación antimonopolística ha sido la proscripción de los males que obran en detrimento de nuestra economía. **Para lograr esta meta trazada, deberá actuarse de una manera rápida y eficiente, obteniendo el remedio adecuado antes de que el mal que se trata de erradicar haya causado un daño irreparable en nuestra actividad económica.** (Negrilla suplida). Exposición de motivos de la Ley Núm. 72 de 23 de junio de 1978.

B. *Remedios por infracciones del Art. 3 de la Ley Antimonopolística*

Por otra parte, y en cuanto al tema de los remedios, el Art. 3, supra, vislumbra la imposición por DACo de una sanción civil de hasta $5,000 a las personas que infrinjan

los reglamentos de la OAM sobre métodos injustos de competencia, prácticas o actos injustos o engañosos cuando "aparezca que tal violación se incurrió con conocimiento, actual o real, de la prohibición, o con conocimiento razonablemente inferible a base de circunstancias objetivas". Art. 3(i) de la Ley Núm. 77, supra, 259 LPRA(i). En esas circunstancias, DACo puede imponer los remedios adecuados y adicional a esto, tiene la discreción para imponer una sanción civil de hasta $5,000 por cada violación. Art. 3 de la Ley Núm. 77, supra, 10 LPRA 259(i). Además, el incumplimiento de las decisiones finales y firmes de DACo puede conllevar la imposición de sanciones civiles de $5,000, previa notificación y vista. "Cada violación separada de tal decisión será considerada como un incumplimiento continuo de tal decisión, en cuyo caso cada día en que se incumpla con la decisión será considerada una violación separada". Art. 3(h) de la Ley Núm. 77, supra, 10 LPRA 259(h). La OAM puede recurrir al Tribunal de Primera Instancia para que ponga en vigor cualquier decisión de DACo que conlleve la imposición de sanciones civiles. Art. 3(j) de la Ley Núm. 77, supra, 10 LPRA 259(j).

Finalmente, en lo que nos atañe, tenemos que destacar que del Art. 3 de la Ley Núm. 77, supra, no se desprende expresamente un término prescriptivo para que la OAM pueda presentar querellas administrativas.

**C. Prescripción de las acciones civiles y penales al amparo de la Ley Antimonopolística**

Si bien la Ley Antimonopolística es silente respecto a la prescripción de querellas administrativas, esta provee un término uniforme para presentar acciones civiles e instar procedimientos criminales. A esos fines, el Art. 11 del mencionado estatuto dispone que "[n]ingún procedimiento criminal bajo esta ley podrá incoarse después de transcurridos cuatro (4) años de haberse cometido el último acto que constituya, en todo o en parte, una violación por la cual se acusa". Art. 11 de la Ley Núm. 77, supra, 10 LPRA sec. 267. Los procedimientos criminales a los que se refiere esta sección excluyen el Art. 3 de la Ley Núm. 77, supra.

De forma similar, el Art. 12(a) instaura una causa de acción civil para obtener el triple del importe de los daños que sufra una persona en sus negocios o propiedades por actos o intentos prohibidos o declarados ilegales por la ley, con excepción de los contemplados en los Arts. 3 y 5 del estatuto en discusión. Art. 12(a) de la Ley Núm. 77, supra, 10 LPRA sec. 268(a).

La Ley Antimonopolística también le reconoce una causa de acción civil al Estado para compensar sus daños por los actos violatorios de la ley, salvo que no procede la compensación triple. Art. 12(b) de la Ley Núm. 77, supra, 10 LPRA sec. 268(b).

Empero, "la acción judicial para recobrar daños de conformidad con las disposiciones de los incisos (a) y (b) de este artículo deberá iniciarse dentro del término de cuatro (4) años a partir del nacimiento de la causa de

acción". Art. 12(C) de la Ley Núm. 77, supra, 10 LPRA sec. 268(C).

### D. Procedimientos administrativos ante la Federal Trade Commission y términos prescriptivos aplicables

La Sección 5 de la FTC Act, supra, disposición en la que se inspiró el Art. 3 de la Ley Antimonopolística, supra, no contiene una limitación expresa al plazo para la iniciación de un procedimiento adjudicativo. No obstante, la FTC Act, a diferencia del estatuto local, no codificó de manera explícita la facultad de la FTC para imponer sanciones económicas por métodos o prácticas injustas o engañosas a través de sus procedimientos de adjudicación administrativa. Sobre ese aspecto, la Sección 5(b), de la FTC Act, 15 U.S.C. sec. 45(b) dispone que al adjudicar una querella la FTC podrá emitir una orden de cese y desista, si concluyera que existe una infracción.

> If upon such hearing the Commission shall be of the opinion that the method of competition or the act or practice in question is prohibited by this subchapter, it shall make a report in writing in which it shall state its findings as to the facts and shall issue and cause to be served on such person, partnership, or corporation **an order requiring such person, partnership, or corporation to cease and desist from using such method of competition or such act or practice**. (Énfasis suplido). Íd.

En Heater v. F.T.C., 503 F.2d 321 (1974) el Noveno Circuito del Tribunal de Apelaciones federal concluyó que el poder de emitir órdenes de cese y desista no autorizaba a la FTC a ordenar restitución económica. En esta decisión, el foro intermedio federal contextualizó el diseño legislativo de la FTC Act. Se hizo hincapié en que al aprobar la FTC Act

el Congreso de Estados Unidos no definió los actos o prácticas injustas o engañosas de competencia, y en cambio le delegó a la FTC el poder de regular y fiscalizar estas prácticas. Íd., págs. 324-325. Así, el tribunal intermedio federal indicó que para reconciliar el amplio poder de la FTC de definir la conducta proscrita, con la necesidad de que las personas tengan una notificación adecuada de qué es lo que prohíbe la ley, el Congreso limitó las consecuencias de una adjudicación administrativa de infracción a una orden de cese y desista.

Al analizar la naturaleza de la Sección 5 de la FTC Act y los procedimientos adjudicativos, el Tribunal Supremo de Estados Unidos aseveró que la FTC no tiene poder para castigar a los infractores. Federal Trade Commission v. Cement Institute, 333 U.S. 683, 706 (1948). A esos efectos, el Tribunal Supremo declaró: "The effect of the Commission's order is not to punish or to fasten liability on respondent for past conduct but to ban specific practices for the future in accordance with the general mandate of Congress". Íd. Véase, además, ABA, *The FTC as an Antitrust Enforcement Agency: The Role of Section 5 of the FTC Act in Antitrust*, Vol. 1, pág. 59.

En general se ha reconocido que la FTC puede emitir órdenes que vayan más allá de cesar y desistir, como por ejemplo, ordenar que se hagan divulgaciones, ordenar que se emita publicidad correctiva para disipar desinformación, entre otros. V. Kalinowski, P. Sullivan, M. Mcguirl,

*Antitrust Laws and Trade Regulation*, 2nd. Ed. Vol. 5, Sec. 78.07, pág. 88. Sin embargo, la capacidad de obtener sanciones civiles, restitución y otros remedios económicos depende de la presentación de una acción judicial y está sujeta a términos prescriptivos.

En esa coyuntura, si la FTC emitiera una orden en la que concluyera que una persona ha incurrido en cualquier acto o práctica engañosa o desleal, luego de que esa orden de cese y desista advenga final, entonces el organismo puede iniciar una acción civil para obtener reparación de los daños resultantes del acto ilícito. Sec. 19 de la FTC Act, 15 U.S.C. sec. 57b (a)(2). En esos casos, el tribunal puede conceder, entre otros remedios, la rescisión de contratos, el reembolso de dinero o la devolución de propiedad y el pago de daños y perjuicios, con excepción de daños punitivos. Sec. 19 de la FTC Act, 15 U.S.C. sec. 57b(b). El estándar probatorio requiere que la FTC demuestre que el acto prohibido es de naturaleza tal que una persona razonable habría sabido que era deshonesto o fraudulento. Íd.

Sin embargo, esta acción al amparo de la Sección 19 de la ley federal prescribe a los tres años de haberse cometido el acto engañoso o fraudulento. Sec. 19 de la FTC Act, 15 U.S.C. sec. 57b(d). Por excepción, si la adjudicación administrativa concluye previo a este periodo de tres años de la conducta objetada, la FTC tendrá un término prescriptivo de un año, a partir de que la orden de cese y desista advenga final, para presentar la acción civil. Íd.

De forma similar, la FTC puede solicitar sanciones civiles por el incumplimiento de sus órdenes. Sec. 5 de la FTC Act, 15 U.S.C. 45(m)(1)(a). También puede reclamar estas sanciones civiles luego de concluir —mediante una orden final— que un acto es injusto o engañoso, siempre y cuando pueda probar que se actuó con conocimiento real de la ilicitud del acto. Sec. 5 de la FTC Act, 15 U.S.C. 45(m)(1)(b). En ambos supuestos aplica un término prescriptivo de cinco años. Véase, 28 U.S.C. sec. 2462. Lo anterior se debe a que, en la ley federal, toda acción judicial para obtener sanciones civiles, confiscación, multas y otras penas pecuniarias prescribe a los cinco años, en ausencia de un término específico en la ley que se pretende ejecutar. Íd. La prescripción en este tipo de reclamaciones civiles se computa a partir de la fecha en que la causa de acción se acumuló. Íd. Se entiende que una causa se acumula en el momento de su nacimiento jurídico o, dicho de otro modo, desde que puede ejercitarse. Gabbelli v. SEC, 568 U.S. 442, 450 (2013).

Más importante aún, el Tribunal Supremo de Estados Unidos ha resuelto que la teoría cognoscitiva del daño, conocida en inglés como "discovery rule", no le aplica al Estado con relación al término prescriptivo para presentar acciones judiciales para la imposición de sanciones civiles. Íd.

Esta determinación surgió en el contexto de una demanda presentada por la agencia federal *Securities Exchange*

*Commission* (SEC) contra ciertos individuos con el propósito de que se le impusieran penalidades civiles por actos de fraude. El Tribunal Supremo federal rechazó el argumento de que el periodo de prescripción debía computarse desde que la SEC advino en conocimiento de los posibles actos fraudulentos. Por el contrario, el máximo foro federal concluyó que la reclamación se acumuló desde que ocurrieron los actos fraudulentos y no desde que el ente gubernamental se enteró. Gabbelli v. SEC, supra, pág. 450.

Los fundamentos subyacentes en la decisión del Tribunal Supremo federal estriban en que, en las acciones judiciales para imponer sanciones civiles, el Gobierno no es un litigante común ni busca el mismo tipo de remedio que una persona privada. Íd. Asimismo, la teoría cognoscitiva existe, en parte, para proteger al ciudadano promedio que no conoce que se le ha causado un daño ni tiene razón para sospecharlo. No obstante, agencias como la SEC tienen como propósito precisamente investigar y erradicar el fraude, para lo que cuentan con múltiples herramientas. Íd., pág. 450. Merecen especial atención los pronunciamientos siguientes:

> In a civil penalty action, the Government is not only a different kind of plaintiff, it seeks a different kind of relief. The discovery rule helps to ensure that the injured receive recompense. But this case involves penalties, which go beyond compensation, are intended to punish, and label defendants wrongdoers. Íd., págs. 451-452.

Ahora bien, a fin de eludir los obstáculos impuestos por la prescripción y obtener remedios económicos, la FTC

solía omitir la etapa de adjudicación administrativa y acudía directamente ante los tribunales mediante el mecanismo de *injunction* provisto en la Sec. 13(b) de la FTC Act, 15 U.S.C. sec. 53(b). Ese apartado, que no incluye un término prescriptivo, dispone que la agencia federal puede solicitar un interdicto permanente cuando una persona **se encuentra en violación o está a punto de quebrantar** una ley que la FTC fiscaliza. Íd. A través de ese mecanismo los tribunales adjudicaban las prácticas engañosas y métodos injustos de competencia, y al mismo tiempo imponían las penalidades civiles u otros remedios económicos.

No obstante, recientemente en AMG Capital Management, LLC v. Federal Trade Commission, 593 U.S. 67 (2021), el Tribunal Supremo de Estados Unidos limitó el poder de la FTC de obtener remedios económicos mediante la Sec. 13(b) de la FTC Act, supra, y concluyó que esa disposición únicamente permite conceder medidas cautelares. Íd., pág.75.

Para llegar a esa determinación, el Tribunal enfatizó el lenguaje de la Sec. 13(b), supra, que alude al remedio interdictal como un mecanismo para impedir o detener conducta **presente o futura**. ["taken as a whole, the provision focuses upon relief that is prospective, not retrospective. Consider the words "is violating" and "is about to violate" (not "has violated") setting forth when the Commission may request injunctive relief"]. AMG Capital Management, LLC v. Federal Trade Commission, supra, pág. 76.

Como consecuencia de lo reseñado, la FTC solo puede instar una demanda para que se impongan penalidades civiles u otros remedios económicos luego de: adjudicar administrativamente la comisión de un acto engañoso o método injusto de competencia; emitir una orden de cese y desista; y esperar a que esta orden advenga final y firme. Para ello, la FTC tiene que actuar dentro del margen de tiempo correspondiente, pues según discutido, la disponibilidad de estas penalidades civiles es susceptible de prescripción.

VII

Como cuestión de umbral, debemos resolver si la no inclusión de un término prescriptivo en el Art. 3 de la ley Antimonopolística, supra, para instar querellas administrativas supone que la OAM no está sujeta a algún límite de tiempo para presentar este tipo de acción ante DACo, o si por el contrario, aplica el término prescriptivo de cuatro años para iniciar procedimientos civiles y penales al amparo de la mencionada ley. En esa tarea, estamos llamados a armonizar "hasta donde sea posible, todas las disposiciones de la ley con el propósito de lograr una interpretación, lógica y razonable de la interpretación legislativa". Romero Barceló v. ELA, 166 DPR 460, 477 (2006).

En nuestra jurisdicción reconocemos el principio "general de hermenéutica que presume que el legislador de Puerto Rico, al adoptar un estatuto de otra jurisdicción, también adopta la interpretación del mismo hecha por el tribunal de más alta jerarquía de ese lugar a la fecha de su

adopción". <u>St. Paul Fire & Marine v. Caguas Fed. Savs.</u>, 121 DPR 761, 768-769 (1988). No obstante, debemos tener presente que el historial legislativo de la Ley Núm. 77, <u>supra</u>, dispone que esta debe interpretarse conforme a nuestra particular realidad económica y social. Véase, <u>Pressure Vessels P.R. v. Empire Gas</u>, 137 DPR 497, 508 (1994).

Como vimos, aunque el Art. 3 de la Ley Antimonopolística, <u>supra</u>, puede considerarse *in pari materia* con la Sec. 5 de la FTC Act, <u>supra</u>, subsisten diferencias estructurales entre ambos preceptos, así como divergencias en las facultades de la FTC *vis a vis* los poderes de la OAM. A grandes rasgos, es ostensible que la antedicha ley federal es mucho más abarcadora. Si bien su estudio es ilustrativo, para fines de dilucidar la controversia sobre prescripción que hoy nos convoca, el estatuto local es la principal fuente de derecho.

Dicho esto, y según surge de la discusión que antecede, la facultad de presentar querellas administrativas conferida a la OAM responde al propósito de **prevenir, evitar y detener** los métodos injustos de competencia y las prácticas injustas engañosas. Art. 3 de la Ley Núm. 77, <u>supra</u>. Una interpretación razonable de los verbos enfatizados —conforme a su significado usual— sugiere que debe existir algún nivel de contemporaneidad entre la conducta proscrita y la correspondiente acción administrativa. Sería difícil, por no decir ilusorio, prevenir, evitar y detener violaciones acontecidas en periodos muy remotos.

Las acepciones avaladas por la Real Academia Española (RAE) del término "prevenir" —al momento de la aprobación de la disposición estatutaria en discusión— suponen anticipación al acto o a la ocurrencia de un daño. Obsérvese que, según la RAE, prevenir es "prever, ver, conocer de antemano o con anticipación un daño o prejuicio". RAE, *Diccionario de la lengua española*, 19ª ed., Madrid, Ed. Espasa Calpe, 1970, pág. 1064. De igual modo, la RAE avala el verbo "evitar" como sinónimo de prevenir y lo define como "apartar algún daño, peligro o molestia; precaver, impedir que suceda". RAE*, op. cit.*, pág. 593. En cuanto al término "detener", es evidente que implica que la acción administrativa sea coetánea a la violación, pues solo se puede detener lo que aún está ocurriendo. Así, se define como "[s]uspender una cosa, impedir, estorbar que pase adelante". RAE*, op. cit.*, pág. 468. Esas acepciones prevalecen hoy. Véase, RAE, https://dle.rae.es/ (última visita, 13 de septiembre de 2024).

Esta aserción sobre la celeridad del proceso administrativo encuentra apoyo en el historial legislativo de la Ley Núm. 77, supra. Nótese que, al instituir el esquema de querellas administrativas, la Asamblea Legislativa expresó como declaración de propósitos que "**deberá actuarse de una manera rápida y eficiente, obteniendo el remedio adecuado antes de que el mal que se trata de erradicar haya causado un daño irreparable en nuestra actividad económica**".

(Negrilla suplida). Exposición de motivos de la Ley Núm. 72 de 23 de junio de 1978.

Sobre ese extremo, el saldo del historial legislativo pone de manifiesto que la intención de instituir una vía de adjudicación administrativa era precisamente propender a la intervención oportuna del Estado, de modo que, más allá del aspecto de sancionar infracciones, existiera un fin público que vindicar. En esa coyuntura, es inescapable colegir que la intervención estatal tardía da al traste con la esencia misma del trámite administrativo que nos concierne.

Por otra parte, reviste particular interés que al aprobar el Art. 3 de la Ley Antimonopolística, supra, la Asamblea Legislativa optó por no definir con especificidad los actos constitutivos de competencia injusta o prácticas injustas engañosas. En su lugar, delegó la autoridad de proscribir actos específicos mediante reglamento. En esa línea, al analizar el Reglamento Núm. 2846, vemos que este es de naturaleza *numerus apertus* y su redacción refleja cierto margen de generalidad. Por ejemplo, lo que puede constituir competencia injusta, según el Reglamento Núm. 2846, se textualizó con amplitud. Llama la atención que según el mencionado cuerpo reglamentario una violación del Art. 3 de la Ley Antimonopolística, supra, puede ser "cualquier conducta que viole las disposiciones estatutarias de carácter civil **o penal** que regulan o afectan directa o indirectamente, el comercio, los negocios o la competencia". (Negrilla Suplida). Art. III del Reglamento Núm. 2846. Lo

anterior implica que el esquema actual contempla como infracciones administrativas actos que a su vez pueden ser constitutivos de delito. De igual modo, vemos que el Art. 3 de la ley en discusión y el procedimiento administrativo allí dispuesto, puede interrelacionarse con otros estatutos. Es decir, la violación de otro estatuto puede considerarse también una práctica violatoria del Art. 3 de la Ley Núm. 77, supra.

Eso precisamente ocurría en el contexto de la Ley Núm. 1 de 1 de diciembre de 1989, según enmendada, conocida como la Ley para Regular las Operaciones de Establecimientos Comerciales, 29 LPRA ant. sec. 301. (Ley de Cierre). La Ley de Cierre expresaba que la violación de sus disposiciones constituía un delito menos grave y a su vez se consideraba un acto de competencia injusta en contravención de la Ley Antimonopolística. Esa interacción estatutaria fue objeto de consideración por el Tribunal de Apelaciones en controversias relacionadas con el tema de prescripción. Como la violación de la Ley de Cierre constituía un delito menos grave, se suscitaron controversias respecto a si a las querellas administrativas les aplicaba el término prescriptivo del Código Penal para delitos menos graves o el periodo de 4 años dispuesto en la Ley Antimonopolística. La disyuntiva produjo una serie de decisiones contradictorias en el foro intermedio. Sin embargo, y con el caveat de que las determinaciones del Tribunal de Apelaciones no sientan precedente vinculante, a modo ilustrativo, es de notar que

en múltiples ocasiones ese foro resolvió que las querellas administrativas de la Ley Antimonopolística estaban sujetas al término de prescripción de 4 años aplicable a las acciones penales bajo el estatuto. Véase, Ley 201-2003, 4 LPRA sec.24x.[1]

Ciertamente, los procedimientos civiles y penales operan en dimensiones distintas a las acciones administrativas del Art. 3 de la Ley Antimonopolística, supra. De igual modo, debemos tener en perspectiva que la facultad de la OAM de instar querellas administrativas persigue vindicar un interés público y no algún interés privado o particular. Empero, muy poco abona a proteger el interés público la intervención tardía del Estado para prevenir, evitar y detener los métodos o prácticas que afectan el comercio.

Asimismo, debemos tener en cuenta que la adjudicación de una querella administrativa por un acto que se considera delito, aunque evidentemente no conlleva el mismo estándar probatorio, supone que se evalúen los elementos constitutivos del acto proscrito. El poder del Estado de encausar administrativamente y por tiempo indefinido una conducta tipificada como delito debe ser escudriñado con extremo recelo.

---

[1] Entre los casos atendidos por el Tribunal de Apelaciones en los que se determinó que el término prescriptivo de la acción administrativa es de cuatro (4) años están: ELA v. Walgreen de Puerto Rico et al., KLRA200801323; (resuelto el 27 de agosto de 2009) ELA v. Caguas Expressway Motors, KLRA0000353; (resuelto el 11 de octubre de 2000 y posteriormente denegado por el Tribunal Supremo (CC-2000-964) ELA v. PMC Marketing Corp. y otros, KLRA0200126-144; (resueltos el 28 de junio de 2002) ELA v. FER-CEN, Inc. h/n/c Ferretería Central y Ramón Anchia Lorenzo, KLRA9800044, (resuelto el 30 de octubre de 1998) y ELA v. Díaz Arocho H/N/C El Expreso Kash & Karry, KLRA0000131 (resuelto el 30 de junio de 2000).

Luego de analizar exhaustivamente las disposiciones legales concernientes, es forzoso concluir que la ausencia de un periodo específico en el Art. 3, supra, no refleja la intención legislativa de imprescriptibilidad de la acción administrativa. El propósito expresado por la Asamblea Legislativa revela que el proceso administrativo existe para que se actué con celeridad, **antes de que la conducta objetada ocasione un daño irreparable**. Permitir la presentación de querellas indefinidamente, independientemente de la fecha en que ocurrió la alegada violación, derrota el fin de vindicar el interés público y torna el proceso en uno de naturaleza meramente punitiva.

Obsérvese además que en la querella que nos ocupa, la OAM solicitó que al adjudicar, DACo considere cada carta enviada a las farmacias como una violación separada, y que se le imponga una multa no menor de $5,000 por cada una. El total de misivas en controversia asciende a 800, lo que conllevaría una penalidad millonaria. A nivel federal, para poder obtener un remedio como este, la FTC está sujeta a los términos prescriptivos discutidos en el acápite anterior.

A la luz de todo lo anterior, concluimos que la facultad de la OAM de presentar querellas administrativas está sujeta al periodo de prescripción establecido en el Art. 11 de la Ley Núm. 77, supra. Consecuentemente, las acciones administrativas por infracciones del Art. 3 de la Ley Antimonopolística, supra, deben presentarse en el término de (4) años a partir de que ocurra el "último acto que

constituye, en todo o en parte, **una violación por la cual se acusa**". (Negrilla suplida). Art. 11 de la Ley Núm. 77, <u>supra</u>.

De una lectura de la querella que nos ocupa se desprende que la violación por la cual la OAM le imputa a Abarca infringir el Art. 3, <u>supra</u>, es por emitir una carta con declaraciones falsas o engañosas a la red de farmacias. Según las alegaciones, el acto violatorio fue aseverar que se realizó un estudio de mercado que la OAM afirmó que no existe. O sea, lo que se impugna es la declaración en sí misma. Así las cosas, el punto de partida para computar la prescripción es la fecha de la mencionada declaración.

En este caso, fue el 21 de septiembre de 2018 que Abarca envió a su red de farmacias la comunicación en disputa. La OAM indica que no fue hasta el 17 de diciembre de 2019 que advino en conocimiento de las posibles violaciones. Nótese que, según las manifestaciones de la OAM, su investigación culminó tres meses después de la alegada práctica injusta o engañosa, lo que supone que tuvo más de tres años para presentar la querella administrativa dentro del término prescriptivo.

No obstante, con arreglo al lenguaje claro del Art. 11 de la Ley Núm. 77, <u>supra</u>, debemos concluir que la prescripción comienza a transcurrir desde la comisión del último acto y no desde que se descubre. La invitación de la OAM a considerar que dicho término comience a decursar a partir del momento en que dicha agencia descubre el fraude constituye una hoja en blanco impermisible en nuestro

ordenamiento. Como es conocido, nuestro estado de derecho requiere a las agencias de gobierno el ejercicio de una diligencia razonable en el cumplimiento de sus facultades delegadas. Como intérpretes de las leyes, el resultado al cual hoy arribamos es el producto de un ejercicio claro de hermenéutica. El ajustar los términos prescriptivos a las necesidades o situaciones particulares que investiga la OAM le corresponde al poder legislativo y no a esta Curia.

Por consiguiente, es desde el 21 de septiembre de 2018 que la OAM podía presentar una querella ante DACo. Al haberse presentado esta el 9 de diciembre de 2022, es forzoso concluir que la acción administrativa está prescrita.

## VIII

Por los fundamentos que anteceden se revoca la Resolución del Tribunal de Apelaciones y se declara con lugar el recurso de revisión judicial presentado por la parte peticionaria. Consecuentemente, se desestima por prescripción la querella administrativa en cuestión.

Se dictará sentencia en conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oficina de Asuntos
Monopolísticos del Departamento
de Justicia y el Estado Libre
Asociado de Puerto Rico

     Recurridos

       v.

Abarca Health, LLC

     Peticionaria

CC-2023-0773

SENTENCIA

En San Juan, Puerto Rico, a 13 de marzo de 2025.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se revoca la Resolución del Tribunal de Apelaciones y se declara con lugar el recurso de revisión judicial presentado por la parte peticionaria. Consecuentemente, se desestima por prescripción la querella administrativa en cuestión.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez emitió una Opinión disidente a la cual se unió el Juez Asociado señor Estrella Martínez. La Jueza Presidenta Oronoz Rodríguez no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oficina de Asuntos
Monopolísticos del Departamento
de Justicia y el Estado Libre
Asociado de Puerto Rico

     Recurridos

         v.

Abarca Health, LLC

     Peticionaria

CC-2023-0773

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ a la cual se une el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 13 de marzo de 2025.

Dada la naturaleza de las funciones delegadas a la Oficina de Asuntos Monopolísticos del Departamento de Justicia de Puerto Rico, por parte de nuestra Asamblea Legislativa, y ante el silencio que guarda la Ley Núm. 77-1964, *infra*, sobre el término que tiene la referida dependencia gubernamental para realizar sus investigaciones y para presentar las correspondientes querellas administrativas al amparo de su Art. 3, nos vemos en la obligación de disentir del curso de acción seguido por una mayoría de mis compañeros y compañeras de estrado en el presente caso. Nos explicamos.

I.

Los hechos medulares que dan margen al presente litigio se recogen con particular precisión en la *Opinión* que hoy emite una mayoría de este Tribunal, razón por la cual hemos decidido adoptar los mismos por referencia. En síntesis, el 16 de diciembre de 2022 la Oficina de Asuntos Monopolísticos del Departamento de Justicia (en adelante, "Oficina de Asuntos Monopolísticos") presentó ante el Departamento de Asuntos del Consumidor (en adelante, "DACo") una *Querella* en contra de Abarca Health, LLC (en adelante, "Abarca"). Ello, por infracciones al Artículo 3 de la Ley Núm. 77 de 25 de junio de 1964, según enmendada, mejor conocida como la *Ley Antimonopolística de Puerto Rico*, 10 LPRA sec. 259 (en adelante, "Ley Núm. 77-1964").[1]

---

[1] El Art. 3 de la Ley Núm. 77-1964, *supra*, establece, en lo pertinente al caso ante nos, lo siguiente:

A. Los métodos injustos de competencia, así como las prácticas o actos injustos o engañosos en los negocios o el comercio, por la presente se declaran ilegales.

B. Sin menoscabo de la facultad de recurrir a los remedios autorizados por la sec. 269 de este título, la Oficina de Asuntos Monopolísticos, mediante reglas y reglamentos promulgados según se provee en la sec. 272(a)(5) de este título, podrá proscribir actos o prácticas específicos, en forma general o en cualquier ramo especial de los negocios o el comercio, de conformidad con la norma establecida en el inciso (a) de esta sección.

[. . .]

C. Sin menoscabo de la facultad de recurrir a los remedios autorizados por la sec. 269 de este título, **la Oficina de Asuntos Monopolísticos podrá radicar y tramitar querellas administrativas en el Departamento de Asuntos del Consumidor para prevenir, evitar y detener las violaciones al inciso (a) de esta sección o los reglamentos aprobados de conformidad al inciso (b) de la misma.** Cuando la parte contra quien se establezca la querella haya sido debidamente notificada de la querella incoada en su contra, el Departamento de Asuntos del Consumidor procederá, tan pronto sea posible, a celebrar la

En la mencionada querella, la Oficina de Asuntos Monopolísticos alegó que, desde el año 2018, Abarca se convirtió en el manejador exclusivo de la cubierta de beneficios de farmacia que Triple-S *Medicare Advantage,* y su línea comercial de negocios, le ofrece a sus beneficiarios y beneficiarias. Añadió que, el 21 de septiembre de 2018, la referida empresa envió una comunicación escrita a su red de farmacias en la que incluyó representaciones falsas para justificar ciertas modificaciones en sus tarifas.

Por estas acciones, en el mencionado escrito, la Oficina de Asuntos Monopolísticos peticionó al DACo que declarara tal conducta como una práctica engañosa en el comercio, así como un método injusto de competencia. Además, como remedio, solicitó que se le impusiera a Abarca multas,

---

vista y resolver el caso otorgando el remedio más adecuado conforme a las particularidades de la querella.

D. La Oficina de Asuntos Monopolísticos o la parte querellada cuando estén afectados por una decisión del Departamento de Asuntos del Consumidor tendrán derecho a la revisión judicial en el Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico. La solicitud de revisión deberá ser radicada ante el Tribunal de Primera Instancia dentro de los treinta (30) días a partir de la fecha de la notificación de la referida decisión.

[. . .]

I. Cuando cualquier persona sea hallada incursa en una violación a los reglamentos aprobados según el inciso (b) de esta sección y aparezca que tal violación se incurrió con conocimiento, actual o real, de la prohibición, o con conocimiento razonablemente inferible a base de circunstancias objetivas, podrá el Departamento de Asuntos del Consumidor imponer, además de los remedios más adecuados conforme a las particularidades de la querella, según se dispone en el inciso (c) de esta sección, una sanción civil de hasta cinco mil dólares ($5,000) por cada violación.

[. . .] (Énfasis suplido). Art. 3, Ley Núm. 77-1964, *supra*, 10 LPRA sec. 259.

de hasta $5,000.00, por cada farmacia a la que la referida empresa le haya enviado la mencionada comunicación escrita.

Enterada de lo anterior, Abarca presentó ante el DACo su *Contestación a la querella*. **En dicho escrito, la referida empresa adujo que la reclamación de la Oficina de Asuntos Monopolísticos estaba prescrita, puesto que se había presentado pasados los cuatro (4) años provistos por el Art. 11 de la Ley Núm. 77-1964,** *supra***, 10 LPRA sec. 267, para iniciar una acción penal por infracción a sus disposiciones.[2]**

Basado en ello, Abarca solicitó al DACo la desestimación de la *Querella* incoada en su contra por la Oficina de Asuntos Monopolísticos. Dicha solicitud fue declarada no ha lugar.

Inconforme con lo resuelto por el foro administrativo, la referida empresa presentó un recurso de revisión judicial ante el Tribunal de Primera Instancia y otro ante el Tribunal de Apelaciones.[3] En este último, Abarca solicitó al foro apelativo intermedio, mediante una moción informativa, que refiriera la adjudicación de los asuntos ante su consideración al foro primario, pues, a su juicio, era el

---

[2] El Art. 11 de la Ley Núm. 77-1964, *supra*, establece lo siguiente:

> **Ningún procedimiento criminal bajo este capítulo podrá incoarse después de transcurridos cuatro (4) años de haberse cometido el último acto que constituya, en todo o en parte, una violación por la cual se acusa.** (Énfasis suplido). Art. 11, Ley Núm. 77-1964, *supra*, 10 LPRA sec. 267.

[3] El que Abarca presentara recursos ante ambos foros se debió a que, según el Art. 3(d) de la Ley Núm. 77-1964, *supra*, 10 LPRA sec. 259(d), las solicitudes de revisión de cualquier determinación adversa deben presentarse ante el Tribunal de Primera Instancia. Sin embargo, según la Ley Núm. 38-2017, *infra*, éstas se deben presentar ante el Tribunal de Apelaciones.

Tribunal de Primera Instancia quien tenía la jurisdicción para entender en los mismos. A dicha solicitud, la Oficina de Asuntos Monopolísticos se opuso.

Evaluados los planteamientos de ambas partes, y en lo relacionado al recurso judicial que nos compete, el Tribunal de Apelaciones desestimó el mismo por falta de jurisdicción. En esencia, el foro apelativo intermedio concluyó que, de conformidad con lo dispuesto en la Ley Núm. 38-2017, mejor conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9601 *et seq.* (en adelante, "LPAU"), la determinación del DACo, la cual tenía ante su consideración, no era revisable por tratarse de un dictamen de naturaleza interlocutoria. En desacuerdo con lo sentenciado por el Tribunal de Apelaciones, Abarca compareció ante este Tribunal.

Así las cosas, en el presente caso, y por tratarse de un planteamiento de índole jurisdiccional, era tarea de este Alto Foro el resolver, en primer lugar, cuál era el Tribunal, -- el primario o el apelativo intermedio --, llamado a revisar una determinación de la Oficina de Asuntos Monopolísticos en los procedimientos al amparo del Art. 3 de la Ley Núm. 77-1964, *supra*. Resuelto ello, en segundo lugar, se debía determinar qué termino, si alguno, tiene la referida dependencia gubernamental para realizar sus investigaciones y para presentar las correspondientes querellas administrativas al amparo de la precitada disposición legal.

En cuanto a esto último, una mayoría de mis compañeros y compañeras de estrado dispone que el término prescriptivo para que la Oficina de Asuntos Monopolísticos presente una querella administrativa ante el DACo, por violaciones al Art. 3 de la Ley Núm. 77-1964, *supra*, es uno de cuatro (4) años.[4] Lo anterior, al extrapolar, -- por analogía --, el término prescriptivo establecido en el Art. 11 de la Ley Núm. 77-1964, *supra*, para iniciar acciones penales.

El ejercicio de interpretación que realiza una mayoría de este Tribunal para llegar a tan errada conclusión, no nos convence. Por ello, disentimos. Explicamos el porqué.

II.

A.

Como es sabido, en escenarios como los aquí bajo estudio, -- donde cierta pieza legislativa guarda silencio sobre determinado asunto --, las normas de hermenéutica disponen que los tribunales debemos precisar si tal silencio corresponde a una laguna involuntaria por parte de la Asamblea Legislativa o si, por el contrario, se trata de una omisión intencional por parte de ésta. J.M. Farinacci Fernós, *Hermenéutica puertorriqueña: Cánones de interpretación jurídica*, San Juan, Editorial InterJuris, 2019, pág. 156.

---

[4] **En cuanto al primer asunto ante nuestra consideración, y como bien señala la *Opinión* mayoritaria, este Tribunal concluye, a nuestro juicio correctamente, que es el Tribunal de Apelaciones el foro con competencia para revisar judicialmente las determinaciones finales del DACo sobre querellas administrativas por violaciones al Art. 3 de la Ley Núm. 77-1964, *supra*. En cuanto a ello, estamos conforme.**

Para realizar dicha encomienda, -- entiéndase, la de determinar si lo omitido resultó de inadvertencia o si, por el contrario, fue intencional --, debemos, en primer lugar, recurrir al texto del estatuto. *Íd.* En segundo lugar, debemos acudir al historial legislativo. *Íd.*

De concluir que estamos ante una omisión involuntaria por parte del legislador o de la legisladora, procede, pues, el uso de herramientas tales como la analogía, [o el análisis "*in pari materia*"]. *Farinacci Fernós, op. cit.,* págs. 156-157. **Ahora bien, de determinarse que el legislador o la legisladora, de forma voluntaria, "excluyó un asunto del texto jurídico[,] corresponde honrar esa determinación".** *Farinacci Fernós, op. cit.,* págs. 156. Esto, salvo que dicha determinación, claro está, produzca algún problema de naturaleza constitucional. *Íd.*[5]

B.

Con ello en mente, y en lo pertinente al asunto que nos ocupa, es por todos y todas sabido que el Art. 3 de la Ley Núm. 77-1964, *supra*, guarda silencio respecto al periodo prescriptivo que tiene la Oficina de Asuntos Monopolísticos para realizar sus investigaciones y, en consecuencia, para presentar las correspondientes querellas administrativas.

---

[5] Es importante recordar también que el uso de una palabra o de un concepto específico, por parte de la Asamblea Legislativa, tiene como consecuencia el que las no mencionadas se entiendan excluidas. Véase, R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. JTS, 1987, Vol. 1, pág. 345.

En lo pertinente, y como mencionamos anteriormente, la precitada disposición legal establece que:

A. Los métodos injustos de competencia, así como las prácticas o actos injustos o engañosos en los negocios o el comercio, por la presente se declaran ilegales.

B. Sin menoscabo de la facultad de recurrir a los remedios autorizados por la sec. 269 de este título, la Oficina de Asuntos Monopolísticos, mediante reglas y reglamentos promulgados según se provee en la sec. 272(a)(5) de este título, podrá proscribir actos o prácticas específicos, en forma general o en cualquier ramo especial de los negocios o el comercio, de conformidad con la norma establecida en el inciso (a) de esta sección.

[. . .]

**C. Sin menoscabo de la facultad de recurrir a los remedios autorizados por la sec. 269 de este título, la Oficina de Asuntos Monopolísticos podrá radicar y tramitar querellas administrativas en el Departamento de Asuntos del Consumidor para prevenir, evitar y detener las violaciones al inciso (a) de esta sección o los reglamentos aprobados de conformidad al inciso (b) de la misma.** Cuando la parte contra quien se establezca la querella haya sido debidamente notificada de la querella incoada en su contra, el Departamento de Asuntos del Consumidor procederá, tan pronto sea posible, a celebrar la vista y resolver el caso otorgando el remedio más adecuado conforme a las particularidades de la querella.

D. La Oficina de Asuntos Monopolísticos o la parte querellada cuando estén afectados por una decisión del Departamento de Asuntos del Consumidor tendrán derecho a la revisión judicial en el Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico. La solicitud de revisión deberá ser radicada ante el Tribunal de Primera Instancia dentro de los treinta (30) días a partir de la fecha de la notificación de la referida decisión.

[. . .]

I. Cuando cualquier persona sea hallada incursa en una violación a los reglamentos aprobados según el inciso (b) de esta sección y aparezca que tal violación se incurrió con conocimiento, actual o real, de la prohibición, o con conocimiento razonablemente inferible a base de circunstancias objetivas, podrá el Departamento de Asuntos del

Consumidor imponer, además de los remedios más adecuados conforme a las particularidades de la querella, según se dispone en el inciso (c) de esta sección, una sanción civil de hasta cinco mil dólares ($5,000) por cada violación.

[. . .] (Énfasis suplido). Art. 3, Ley Núm. 77-1964, *supra*, 10 LPRA sec. 259.

Como se puede apreciar, en efecto, el Art. 3 de la Ley Núm. 77-1964, *supra*, no establece término alguno para que la Oficina de Asuntos Monopolísticos realice sus investigaciones y presente, de así entenderlo necesario, las correspondientes querellas administrativas al amparo del mismo. Para determinar si lo anterior se trata de una omisión intencional o de una omisión involuntaria, -- de conformidad con las normas de hermenéutica antes discutidas --, procede, pues, acudir al historial legislativo del referido estatuto.

**Habiendo realizado el anterior ejercicio, es menester destacar que nuestra Asamblea Legislativa, al redactar la Ley Núm. 77-1964, *supra*, en la cual se incluye su Art. 3, consideró que las investigaciones sobre asuntos monopolísticos, como el que hoy tenemos ante nos, son extensas y complejas.** A. Estrella, *Antitrust Law in Puerto Rico*, 28 (Núm. 3) Rev. Jur. C. Abo. PR 505, 670 (1985); Diario de Sesiones de la Ley Antimonopolística de Puerto Rico 1713 (1964) (versión digital). **Sobre este extremo, en el Historial Legislativo de la Ley Núm. 77-1964, *supra*, consta un rico intercambio sobre el porqué de la amplitud de los términos prescriptivos contenidos en ésta. Al**

**respecto, se explica que la razón para dicha amplitud se debe a que se "trata [aquí] de materia en que hay que hacer estudios económicos y hay que hacer una serie de investigaciones que toman tiempo para determinar si se ha incurrido o no en violación de la ley."** Diario de Sesiones, *supra*. **De ello, precisamente, se trata el caso de marras.**

III.

Así las cosas, establecido lo anterior, somos del criterio que, al aprobar la Ley Núm. 77-1964, *supra*, y en particular su Art. 3, nuestra la Asamblea Legislativa tuvo la intención de no establecer término alguno para que la Oficina de Asuntos Monopolísticos realizara sus investigaciones y presentará, de así entenderlo necesario, las correspondientes querellas administrativas al amparo de la precitada disposición legal. Lo anterior nos resulta aún más evidente, si tomamos en consideración que dicha ley se creó con la intención de "proteger al pueblo, asegurando a éste en general y a los pequeños comerciantes, en particular, los beneficios de la libre competencia", un interés, como sabemos, mayor. Exposición de Motivos de la Ley Núm. 77-1964, *supra*. Siendo ello así, erró una mayoría de mis compañeros y compañeras de estrado al sustituir el criterio del legislador o legisladora por el suyo.

No empece a que lo anterior sería, por sí solo, suficiente para disponer del presente caso, abona a nuestra conclusión el hecho de que, en la ley bajo estudio, la Asamblea Legislativa sí incluyó, de forma clara e

inequívoca, los términos prescriptivos que se tenían para presentar acciones civiles y penales, pero no lo hizo así respecto a procedimientos administrativos. Y no podía ser de otra manera, y eso sí se reconoce en la *Opinión* hoy emitida, pues los procedimientos civiles y penales operan en dimensiones distintas a las acciones administrativas del Art. 3 de la Ley Núm. 77-1964, *supra.* Véase, *Opinión* mayoritaria, pág. 38. De ahí, lo incorrecto de haber adoptado los términos de los primeros para disponer del caso de marras.

Como se sabe, la distinción entre los términos penales y administrativos se fundamenta en el efecto que tiene cada procedimiento sobre el objeto de la investigación. En el ámbito penal, el término está dirigido a prevenir que una persona sea procesada después del transcurso de una cantidad de tiempo que pudiera erosionar su capacidad para defenderse y, además, en consideración a la magnitud de la intromisión y los riesgos que ello conlleva sobre sus intereses personales, libertarios y propietarios. El impacto del procedimiento administrativo es, en comparación, mucho menos lesivo a la persona o entidad, toda vez que su fin es mayormente reparador y correctivo, como, por ejemplo, en este caso es primordialmente la prevención y erradicación de las prácticas injustas y engañosas en el comercio.

En fin, la prescripción frente al poder punitivo estatal se diferencia diáfanamente de la prescripción en la esfera civil y administrativa, la cual se dirige a liberarse

de una obligación por el transcurso del tiempo y cuya finalidad es dar seguridad y fijeza a los derechos. Por tal razón, no puede avalarse que se establezca automáticamente por analogía un término entre dos ámbitos del derecho incompatibles en su naturaleza y función cuando la Asamblea Legislativa no contempló hacerlo.

**Ello, por supuesto, no significa que la agencia administrativa, aquí, la Oficina de Asuntos Monopolísticos, tenga una carta en blanco para llevar a cabo investigaciones cuya longevidad raye en la irracionabilidad.** No es cuestión de ser un poder irrestricto en cuanto a los términos, pues, de hecho, una extensión irrazonable activaría las consideraciones de debido proceso de ley que amparan a las personas naturales y jurídicas, de la misma manera en la que a cualquier querellante la aplica la incuria cuando prolonga innecesariamente la presentación de su caso.

Si bien se puede reconocer la complejidad y la extensión del alcance investigativo en la detección de prácticas injustas y engañosas en el comercio y la preparación de querellas a raíz de éstas, -- en particular cuando se toma en consideración la fluctuación en el comportamiento del mercado --, es de interés, tanto para el ordenamiento, como para el individuo, que la agencia sea proactiva en la consecución de su misión y que la razonabilidad de sus actos quede plasmada en todos los aspectos de los procedimientos que lleva a cabo. **Es, precisamente, la idea de un plazo razonable la que debe**

**imperar en este procedimiento, pues va de la mano con la buena función administrativa y la protección al debido proceso de ley, el cual no puede ser obviado o restringido por un silencio en la ley.** Lo anterior cobra mayor importancia al considerar el fin sancionatorio de los procedimientos de esta naturaleza.[6]

Siendo ello así, procedía, pues, en el presente caso, el determinar que no existe término alguno, -- siempre y cuando sea un periodo de tiempo razonable --, para que la Oficina de Asuntos Monopolísticos pueda realizar sus investigaciones y presentar ante el DACo, cuando así lo entienda necesario, las correspondientes querellas administrativas al amparo del Art. 3 de la Ley Núm. 77-1964, *supra*, y, por consiguiente, ordenar la continuación de los procedimientos ante dicha agencia.

IV.

**En fin, y a modo de epílogo, somos de la opinión que, en escenarios como éstos, nuestra tarea de interpretación judicial debe ir dirigida a fortalecer aquellas instituciones que, en su día a día, y a través de sus investigaciones, se aseguran de proteger el bienestar del pueblo puertorriqueño. No a debilitarlas.**

---

[6] Tal concepto es similar al que orientó a este Tribunal en *In re Pellot Córdova*, 204 DPR 814 (2020), en el cual, el balance de intereses entre el debido proceso de ley y el ejecutar nuestra función disciplinaria para beneficio de la sociedad y la profesión, nos llevó a descartar legislación que imponía un término prescriptivo de tres (3) años a las acciones disciplinarias contra abogados y notarios.

Lo resuelto hoy por una mayoría de este Tribunal en el caso de marras no es reflejo de dicha aspiración. Por ello, como ya adelantamos, disentimos.


                                        Ángel Colón Pérez
                                          Juez Asociado