Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| MITZI AYALA LANDRÓN<br><br>Recurrida<br><br>v.<br><br>CHARLES E. VILARÓ NELMS, CORPORACIÓN ABC; FULANO DE TAL; **SIMED** y otros<br><br>Peticionarios | KLCE202500458 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: BY2024CV04188 (701)<br><br>Sobre: Impericia Médica |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Álvarez Esnard y la jueza Prats Palerm.

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 24 de junio de 2025.

Comparece ante nos el Sindicato de Aseguradores para la Suscripción Conjunta de Seguro de Responsabilidad Médico-Hospitarairia ("SIMED" o Peticionario) como asegurador del Dr. Charles Vilaró Nelms ("Dr. Vilaró Nelms") mediante *Petición de Certiorari* presentada el 28 de abril de 2025. Nos solicita la revocación de la *Resolución* emitida 11 de marzo de 2025, notificada el 16 de marzo del mismo año por el Tribunal de Primera Instancia, Sala Superior de Bayamón ("foro primario" o "foro *a quo*"). Por virtud del aludido dictamen, el foro primario declaró *No Ha Lugar* la moción de desestimación instada por SIMED y concluyó que la causa de acción presentada contra esta parte no está prescrita.

Por los fundamentos que expondremos a continuación, **denegamos** el presente recurso.

**I.**

El 16 de julio de 2024, Mitzi Ayala Landrón ("señora Ayala Landrón" o "Recurrida") presentó *Petición* sobre impericia médica y

daños y perjuicio contra el Dr. Vilaró Nelms y otros demandados de nombre desconocido.[1] Mediante este escrito, alegó que el 4 de agosto de 2021, acudió al consultorio de su médico de cabecera, la Dra. Eva Colón Maldonado ("Dra. Colón Maldonado"), tras lesionarse el primer dedo del pie durante un proceso de pedicura. La Recurrida. quien adujo que tenía un historial médico con antecedentes de varias condiciones, entre estas diabetes, esbozó que completó un procedimiento de antibióticos de siete (7) días. No empece a ello, la señora Ayala Landrón expresó que un examen físico reveló la presencia de secreciones purulentas en el área afectada. Agregó que, tras varias evaluaciones, el 10 de agosto de 2021, la Dra. Colón Maldonado inició tratamiento con el antibiótico *Zythromax* y la refirió a un cirujano para evaluación

La Recurrida indicó que, el 13 de agosto de 2021, acudió por primera vez al consultorio del cirujano general Dr. Vilaró Nelms, quien documentó la queja principal y el motivo de la visita como trauma en el pie derecho durante pedicura. Sin embargo, la Recurrida sostuvo que el Dr. Vilaró Nelms documentó incorrectamente que ésta había comenzado con el antibiótico *Zythromax* cinco (5) días atrás, cuando solo habían trascurrido tres (3) días de tratamiento y descontinuó el uso del referido antibiótico. Asimismo, argumentó que el 3 de septiembre de 2021, una radiografía comparativa diagnosticó edema severo y disminución ósea en el primer dedo del pie derecho y recomendó un "MRI" para descartar osteomielitis. Del mismo modo, señaló que, el 3 de septiembre de 2021, el laboratorio informó el resultado de un cultivo bacteriológico de las secreciones de la lesión del pie derecho. Esgrimió que, no empece a estos resultados, el Dr. Vilaró Nelms documentó erróneamente que en la radiografía no hubo evidencia de osteomielitis. Asimismo, la Recurrida arguyó que el

---

[1] Véase, Apéndice del Recurso, págs. 1-8.

Dr. Vilaró Nelms le ofreció administrarle antibióticos intravenosos en el hospital, pero ésta respondió que no podía acudir debido a compromisos médicos previos.

De las alegaciones de la *Demanda*, surge que la Recurrida señaló que no regresó al consultorio del Dr. Vilaró Nelms y explicó que el 9 de septiembre de 2021, acudió a la oficina del Dr. Orlando Rodríguez Cabrera ("Dr. Rodríguez Cabrera"). Esbozó que este galeno documentó, entre otras cosas, que había una infección en el primer dedo del pie derecho con diagnóstico de impresión de celulitis, gangrena y osteomielitis. Arguyó además que, ese mismo día, ante el cuadro de la lesión, el Dr. Rodríguez Cabrera procedió con la debridación con anestesia local y, acto seguido, describió que hubo gangrena severa con abundante pus profundo en el dedo y exposición al hueso.

Cónsono con lo anterior, la señora Ayala Landrón expuso que, tras someterse a varios estudios, el 20 de septiembre de 2021, se le recomendó amputar el dedo lesionado. Agregó que dicha apuntación se llevó a cabo el 27 de septiembre de 2021. Debido a los hechos previamente relatados, la Recurrida le imputó al Dr. Vilaró Nelms negligencia, toda vez que este no brindó la atención médica adecuada y solicitó una indemnización de quinientos mil dólares ($500,000.00), más una partida en daños punitivos.

Posteriormente, el 13 de agosto de 2024, la Recurrida presentó *Demanda Enmendada* e incluyó a SIMED como parte codemandada.[2] En respuesta, el 15 de octubre de 2024, el Dr. Vilaró Nelms presentó *Contestación a Demanda.*[3] En esta, negó ciertas alegaciones y levantó defensas afirmativas. Como se puede apreciar, el 23 de octubre de 2024, SIMED presentó *Moción de*

---

[2] *Íd.*, págs. 11-15.
[3] *Íd.*, págs. 16-20.

*Desestimación.*[4] Por virtud de este escrito, el Peticionario enfatizó que procedía la desestimación del pleito contra esta parte, toda vez que la causa de acción está prescrita. Fundamentó este argumento, esbozando que la Recurrida no interrumpió el término prescriptivo, puesto que ésta nunca le remitió una reclamación extrajudicial a SIMED directamente, lo cual tuvo la consecuencia de que el término prescriptivo de un año para instar una acción judicial transcurriera normalmente.

En respuesta, el 13 de noviembre de 2024, la Recurrida, presentó *Oposición a Moción de Desestimación.*[5] En lo pertinente, la señora Ayala Landrón expuso que, SIMED fue debidamente notificada mediante una reclamación extrajudicial y que, además, el Peticionario participó activamente en comunicaciones relacionadas a la investigación del caso.

Evaluado estos escritos, el 12 de marzo de 2025, el foro primario emitió y notificó *Resolución.*[6]   En esta formuló las siguientes determinaciones de hechos incontrovertidos:

1. El 12 de agosto de 2022, la Sra. Ayala le remitió al Dr. Vilaró una misiva titulada Reclamación Extrajudicial por Impericia Médica, Negligencia, Daños y Perjuicios, Angustias Mentales y Daños Emocionales (Reclamación Extrajudicial).

2. El Dr. Vilaró le reenvió la Reclamación Extrajudicial a SIMED.

3. SIMED recibió copia de la Reclamación Extrajudicial el 16 de agosto de 2022.

4. El 12 de septiembre de 2022, SIMED le requirió información a la representación legal de la Sra. Ayala para proceder con la investigación de la Reclamación Extrajudicial, según el Art. 27.162 del Código de Seguros de Puerto Rico, Ley Núm. 77-1957, supra.

5. El 15 de noviembre de 2022, la representación legal de la Sra. Ayala le remitió a SIMED copias de un informe pericial relacionado a la reclamación y los expedientes médico.

6. El 17 de noviembre de 2022, SIMED le remitió un correo electrónico a la representación legal de la Sra. Ayala mediante el cual confirmó que recibió documentación relacionada con la reclamación extrajudicial

---

[4] *Íd.*, págs. 21-29.
[5] *Íd.*, págs. 30-32.
[6] *Íd.*, págs. 49-63.

7. El 7 de mayo de 2024, la Lcda. Alejandra Angelet, examinadora de reclamaciones legales y ajustadora independiente de SIMED, le comunicó, mediante correo electrónico, a la representación legal de la Sra. Ayala, el siguiente mensaje:

Esperando que este correo les encuentre bien, les informo que, luego de haberme reunido con el Dr. Charles Vilaró en días pasados y de revisar todos los documentos que nos hicieras llegar, éste no está dispuesto en este momento a considerar la oferta cursada ni a extender una contraoferta transaccional.[7] (escolios omitidos)

Asimismo, el foro *a quo*, identificó los siguientes dos (2) hechos que estaban en controversia:

1. La responsabilidad civil extracontractual que ostenta la parte demandada para con la demandante por los daños alegados, si alguna.
2. La identidad y valorización de los daños sufridos por la Sra. Ayala.[8]

Cónsono con estas determinaciones, el foro *a quo* razonó que en nuestro ordenamiento no se exige cumplir con un requisito de forma específico para presentar reclamaciones extrajudiciales. Determinó que la voluntad de la señora Ayala Landrón de interponer la reclamación extrajudicial contra la SIMED quedó patente, pese a que dicha reclamación no le fue remitida directamente al Peticionario. Referente a este último punto, puntualizó que el conjunto de comunicaciones compartidas entre las partes tuvo el efecto de interrumpir el término, pues estas fueron enviadas por el titular del derecho y, además, del contenido de las comunicaciones, se desprendía con claridad la identidad de la acción de la reclamación por responsabilidad civil extracontractual. De igual manera, resolvió que las comunicaciones en cuestión fueron un método idóneo y finalizó su dictamen expresando lo siguiente:

[h]allamos irreconciliable con el derecho aplicable previamente expuesto que SIMED, luego de intercambiar comunicaciones con la parte demandante durante meses, requerir documentación relacionada y participar de conversaciones transaccionales, hoy procure ampararse en un tecnicismo para evitar asumir responsabilidad por los

---

[7] *Íd.*, págs. 51-52.
[8] *Íd.*, págs. 52-53.

daños alegados. Nótese que, en nuestra jurisdicción, rige el principio de la buena fe y este no concede espacio para la utilización de la figura de la prescripción cuando su aplicación es levantada por quien con su propia conducta la provoca.[9]

En desacuerdo, el 27 de marzo de 2025, SIMED presentó *Moción de Reconsideración.*[10] Mediante esta, reiteró que procedía desestimar la causa de acción contra el Peticionario, pues la misma estaba prescrita toda vez que no se logró interrumpir el término prescriptivo conforme a derecho. Por su parte, el 30 de marzo de 2025, la señora Ayala Landrón presentó *Oposición a Moción de Reconsideración.*[11] En esta, esbozó entre otros argumentos, que el Tribunal Supremo de Puerto Rico en *Birriel Colón v. Econo y otro,* 213 DPR 80 (2023) no permite que un asegurador induzca a error al reclamante a que este último confíe en una vía de resolución extrajudicial para luego invocar prescripción. Evaluado las posturas de las partes, el 30 de marzo de 2025, notificada al día siguiente, el foro primario emitió *Resolución Interlocutoria* y consecuentemente declaró *No Ha Lugar* la solicitud de reconsideración presentada.[12]

Insatisfecho aun, el 28 de abril de 2024, el Peticionario presentó el recurso de epígrafe y formuló el siguiente señalamiento de error:

> Cometió error el honorable Tribunal de Primera Instancia al declarar No Ha Lugar la Moción de Desestimación de SIMED, a pesar de que la causa de acción directa contra dicha aseguradora codemandada estaba prescrita, por no haberse interrumpido el término prescriptivo contra aquella.

El 30 de abril de 2025, emitimos *Resolución* en la que le concedimos un término de diez (10) días a la parte Recurrida para que expusiera su posición en torno al recurso. Oportunamente, el 19 de mayo de 2025, la señora Ayala presentó *Oposición a la*

---

[9] *Íd.,* pág. 63.
[10] *Íd.,* págs. 64-71.
[11] *Íd.,* págs. 72-76.
[12] *Íd.,* pág. 83.

*Expedición del Auto de Certiorari.* Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable al caso de autos.

**II.**

***A. Certiorari***

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.,* 203 DPR 708, 718 (2019). "El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (4) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.,* 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni en ausencia de parámetros. *BPPR v. SLG Gómez-López,* 213 DPR 314, 337 (2023). La Regla 40 del

Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari. Íd.* Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction, supra*, págs. 712-713. No obstante, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R. 52.1.

### B. *Desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil*

En nuestro esquema procesal, la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, permite a la parte demandada solicitar la desestimación de la acción legal antes de contestarla "cuando es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará". *Inmob. Baleares et al. v. Benabe et al.* 214 DPR ___ (2024) 2024 TSPR 112, pág. 18-19 citando a *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1065 (2020). "Por ello, un demandado puede solicitar la desestimación total de la reclamación, incluso antes de contestar

propiamente la demanda, al amparo de la Regla 10.2 de Procedimiento Civil, supra". *Rodríguez Vázquez y otros v. Hospital Español Auxilio Mutuo*, 215 DPR ___ (2025), 2025 TSPR 55, pág. 10.

La precitada regla fija los siguientes fundamentos para solicitar la desestimación: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio;** y (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2. (Énfasis nuestro).

En lo pertinente, el inciso (5) de la Regla 10.2 de Procedimiento Civil, *supra,* permite la desestimación de una demanda bajo el fundamento de que no expone una reclamación que justifique la concesión de un remedio. En este contexto, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda que hayan sido aseverados de manera clara y concluyente y, a su vez, considerarlos de la forma más favorables a la parte demandante. *BPPR v. Cable Media,* 215 DPR___ (2025) 2025 TSPR 1, pág. 11.

No obstante, para que prevalezca una moción de desestimación al amparo de la Regla 10.2 (5) de Procedimiento Civil, *supra*, esta "debe establecer con toda certeza que la parte demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda ser probado en apoyo a su reclamación, aun interpretando la demanda de la forma más liberal posible a su favor". *Díaz Vázquez et al. v. colón Peña et al* 214 DPR___ (2025) 2024 TSPR 113, pág. 16. Tampoco procede la desestimación si el remedio no procede bajo ningún supuesto de

derecho ni pueda ser enmendada para subsanar cualquier deficiencia. *Íd.*

Por otra parte, el tribunal debe examinar si "a la luz de la situación más favorable al demandante, y resolviendo toda duda a su favor, la demanda es suficiente para constituir una reclamación válida". *BPPR v. Cable Media., supra*, pág. 12.

### C. *Prescripción extintiva*

La prescripción de las acciones es un asunto de derecho sustantivo y no procesal. *Landrau Cabezudo y otros v. La Autoridad*, 215 DPR___ (2025) 2025 TSPR 7 pág. 14. Esta figura jurídica persigue "evitar la incertidumbre de las relaciones jurídicas y castigar la inacción en el ejercicio de los derechos." *García Pérez v. Corp. Serv. Mujer,* 174 DPR 138, 147 (2008). Por ello, nuestro ordenamiento "parte de la premisa de que las reclamaciones válidas deben ejercerse oportunamente". *Oficina de Asuntos Monopolísticos del Departamento de Justicia y otro v. Abarca Health, LLC*, 215 DPR___ (2025) 2025 TSPR 23 pág. 17.

A esos fines, el Artículo 1189 del Código Civil de 2020, 31 LPRA sec. 9481, establece que "[l]a prescripción es una defensa que se opone a quien no ejercita un derecho o acción dentro del plazo de tiempo que la ley fija para invocarlo". A su vez, el aludido artículo añade que "[l]as acciones prescriben por el mero lapso del tiempo fijado por ley". *Íd.* Por otro lado, en las causas de acción por daños, "los términos prescriptivos comienzan a transcurrir desde que el agraviado tuvo o debió tener conocimiento del daño y estuvo en posición de ejercer su causa de acción". *Landrau Cabezudo y otros v. La Autoridad*, supra.

Cabe aclarar, que cuando un perjudicado tenga una causa de acción en daños contra varios demandados, "deberá interrumpir la prescripción en relación con cada cocausante por separado, dentro del término de un año establecido [...] si interesa conservar

su causa de acción contra cada uno de ellos. *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 389 (2012); *Maldonado Rivera v. Suarez,* 195 DPR 182, 210 (2016). Por ende, "en las obligaciones solidarias que provengan de coacusación del daño, cuando el acreedor reclama de uno de los deudores solo la parte que le corresponde, no se interrumpe por ello la prescripción respecto a los otros codeudores". Artículo 1189 del Código Civil de 2020, 31 LPRA sec. 9054.

En armonía con lo anterior, nuestro ordenamiento jurídico reconoce que, a diferencia de la caducidad, la prescripción sí permite interrupción. Existen tres (3) maneras de interrumpir la prescripción, a saber: (1) la presentación de la acción judicial correspondiente, (2) por una reclamación extrajudicial hecha por el acreedor, dirigida al deudor, o (3) el reconocimiento de la obligación por parte del deudor. Producida la interrupción, comienza nuevamente a transcurrir el cómputo del plazo. Art. 1197 del Código Civil de 2020, 31 LPRA sec. 9489. Véase, además, *Ross Valedón v. Hosp. Dr. Susoni et al.*, 213 DPR 481, 496 (2024). En ausencia de un acto interruptor, el titular de una causa de acción pierde su derecho a instalarla si no la ejerce en el plazo que establece la Ley. *Conde Cruz v. Resto Rodríguez*, 205 DPR 1043, 1067 (2020).

Ahora bien, en *Birriel Colón v. Econo y otro*, 213 DPR 80, 101 (2023), algunos factores que se pueden tomar en consideración para determinar si una reclamación frente a quien corresponda, pudiera surtir efectos en cuanto a otras personas a las que no fue expresamente dirigida son: (1) la suficiencia del esfuerzo que el interruptor debe realizar para determinar el sujeto pasivo de su pretensión y (2) si el acto de interrupción hubiera llegado o podido llegar normalmente a ser conocido por los afectados. Asimismo, en Puerto Rico se ha reafirmado el principio general de que "la buena

fe proscribe la utilización de la defensa de prescripción." *Íd.*, pág. 102.

Por otra parte, en virtud de esa normativa, nuestro Tribunal Supremo ha reiterado la finalidad jurídica de esta figura, estableciendo lo siguiente:

> Al fijar un plazo determinado en el cual se deberá instar una acción, se pone punto final a las situaciones de incertidumbre jurídica y se evita que las personas estén sujetas de forma indefinida a la contingencia de una reclamación. De lo contrario, un demandado podría encontrarse en una situación de indefensión como consecuencia del paso del tiempo y la desaparición de la prueba. *Íd.,* pág. 1068.

De tal manera, se promueve que las personas ejerzan sus causas de acción con diligencia, lo que fomenta la estabilidad en las relaciones y el tráfico jurídico. *SLG Haedo-Castro v. Roldan Morales*, 203 DPR 324, 337 (2019).

**III.**

Expuesto el marco jurídico y ponderados los argumentos presentados por las partes, resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. Al amparo de los criterios que guían nuestra discreción, no intervendremos en la determinación recurrida. En el presente caso, el Peticionario no ha demostrado que el foro de instancia se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho. Tampoco constató que el abstenernos de interferir en la determinación recurrida constituiría un fracaso irremediable de la justicia en esta etapa de los procesos. Por lo cual, somos del criterio que en el presente caso procede que se deniegue el recurso de *certiorari* de epígrafe.

Nuestra determinación de no intervenir en los méritos de la decisión recurrida en estos momentos no constituye una adjudicación de la controversia existente entre las partes ni prejuzga el asunto planteado por estas.

KLCE202500458                                                    13

## IV.

Por los fundamentos anteriormente expuestos, **denegamos** el recurso de epígrafe.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones