Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| FRANCISCO AROCHO LABOY Y OTROS<br><br>Recurridos<br><br>v.<br><br>EL COOLMADO, LLC. Y OTROS<br><br>Peticionarios | TA2025CE00240 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV01581 (808)<br><br>Sobre: Daños y Perjuicios |
|---|---|---|

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard.

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 25 de septiembre de 2025.

Comparece ante nos El Coolmado, LLC ("El Coolmado" o "Peticionario") mediante *Petición de Certiorari* presentada el 1 de agosto de 2025. Nos solicita la revocación de la *Resolución* emitida y notificada el 17 de junio de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro primario" o "foro *a quo*"). Por virtud del aludido dictamen, el foro primario declaró *No Ha Lugar* la solicitud de sentencia sumaria instada por el Peticionario.

Por los fundamentos que expondremos a continuación, **denegamos** el auto de *certiorari* presentado.

### I.

El 14 de febrero de 2024, Francisco Arocho Laboy, Dorian Narváez Vélez, Bienvenido Arocho y Carmen Laboy Cruz (en conjunto, "los Recurridos") instaron *Demanda* sobre daños y perjuicios contra El Coolmado y otros demandados de nombre

desconocido.[1] Mediante esta, los Recurridos alegaron que eran el padre, la madre y los abuelos paternos de Francisco Arocho Narváez ("señor Arocho Narváez"), quien el 6 de noviembre de 2022 falleció a consecuencia de un accidente de tránsito. En específico, detallaron que el señor Arocho Narváez "perdió la vida al ser impactado en el Expreso José de Diego por Yareth J. García Ramírez, quien conducía una F-150, tablilla 959-634, en la vía contraria en estado de avanzada embriaguez".[2] Adujeron que el conductor Yareth García Ramírez ("señor García Ramírez") confesó y se declaró culpable de todos los cargos que pesaban en su contra.[3]

Los Recurridos aludieron que previo al accidente, el señor García Ramírez se encontraba en El Coolmado ingiriendo bebidas alcohólicas. Sobre esto último, abundaron que, pese a que el señor García Ramírez se encontraba visiblemente intoxicado, El Coolmado continuó suministrándole bebidas alcohólicas. Asimismo, expusieron que advinieron en conocimiento que el Peticionario se encontraba en el establecimiento El Coolmado previo al accidente el 10 de enero de 2024, mediante el testimonio oral extrajudicial vertido por el propio señor García Ramírez, en la Institución Correccional 1072, ante la presencia de su abogado. Fundamentado en lo anterior, los Recurridos solicitaron a El Coolmado una cuantía de siete millones de dólares ($7,000.000.00) por el dolor y sufrimiento mental y emocional experimentado por motivo de la pérdida del señor Arocho Narváez.

En respuesta, el 25 de julio de 2024, El Coolmado, presentó *Contestación a Demanda.*[4] Mediante esta, negó ciertas alegaciones

---

[1] Véase, SUMAC TPI, Entrada 1.
[2] Véase, SUMAC TPI, Entrada 1, pág. 3.
[3] Se desprende del expediente que el señor Yareth García Ramírez  se declaró culpable de violar los Artículos 7.02, 7.05 y 5.07 (C) de *Ley de Vehículos y Tránsito de Puerto Rico*, Ley Núm. 22-2000, según enmendada, 9 LPRA secs 5127, 5202 y 5205. Véase, SUMAC TPI, Entrada 8.
[4] Véase, SUMAC TPI, Entrada 20.

y levantó defensas afirmativas. En concreto, negó cualquier responsabilidad por la muerte del señor Arocho Narváez y afirmó que no respondía por las acciones cometidas por el señor García Ramírez.

Luego de varios trámites procesales y tras concluir el descubrimiento de prueba, el 23 de abril de 2025, El Coolmado, presentó *Solicitud de Sentencia Sumaria por Insuficiencia de Prueba*.[5] Por virtud de este escrito, el Peticionario sostuvo que la causa de acción presentada por los Recurridos se encuentra prescrita. Asimismo, expresó que los Recurridos no contaban con prueba suficiente para probar los elementos de la reclamación instada.

En respuesta, el 2 de junio de 2025, los Recurridos sometieron *Oposición a la Solicitud de Sentencia Sumaria*.[6] Mediante esta, argumentaron que no procedía dictar sentencia sumaria puesto que existía "prueba circunstancial" que establece controversia en cuanto al estado de embriaguez del señor García Ramírez. De igual forma, solicitó la aplicación de la doctrina de cosa juzgada respecto a la defensa de prescripción levantada por El Coolmado. En relación con lo anterior, los Recurridos se refirieron al *Opinion and Order* emitido por el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico que denegó un *Motion to Dismiss* en el caso de *Baleria Arocho Narváez v. El Coolmado, LLC*, civil no. 24-1069. Agregaron que, dicho dictamen federal concluyó que "*[t]he Complaint in this case clearly states that Plaintiff learned García had been at El Coolmado and not 24 Marketplace on January 10, 2024*".[7]

Evaluados los escritos sometidos ante la consideración del foro *a quo*, el 17 de junio de 2025, el foro primario dictó

---

[5] Véase, SUMAC TPI, Entrada 72.
[6] Véase, SUMAC TPI, Entrada 86.
[7] Véase, SUMAC TPI, Entrada 86, pág. 11. Véase, además, en la misma Entrada el anejo intitulado *Opinion and Order*.

*Resolución.*[8] Por virtud de esta, formuló las siguientes determinaciones de hechos incontrovertidos:

1. El accidente en el cual Francisco Arocho Narváez perdió la vida ocurrió el 6 de noviembre de 2022.

2. Los demandantes conocieron del accidente donde falleció Francisco Arocho Narváez, el mismo día en que ocurrió.

3. La persona que causó la muerte de Francisco Arocho Narváez fue Yareth García Ramírez, quien ni tenía seguro obligatorio de automóvil.

4. Ninguno de los demandantes estuvo con Yareth García Ramírez las horas antes del accidente.

5. Ninguno de los demandantes vio a Yareth García Ramírez consumir bebidas alcohólicas antes del accidente.

6. Ninguno de los demandantes vio a Yareth García Ramírez en el negocio El Coolmado la noche del accidente.

7. Ninguno de los demandantes sabe, por propio y personal conocimiento, de dónde venía Yareth García Ramírez cuando causó el accidente.

8. Ninguno de los demandantes tiene conocimiento personal de si Yareth García Ramírez llegó visiblemente intoxicado a El Coolmado.

9. Según testificado en su deposición, los demandantes Bienvenido Arocho y Carmen Laboy Cruz no tienen ninguna evidencia, sea video, foto o documento, de donde surja dónde estaba Yareth García Ramírez consumiendo bebidas alcohólicas antes del accidente.

10. Yareth García Ramirez recuerda haber visitado varios negocios la noche del 5 de noviembre a la madrugada del 6 de noviembre de 2022. Además, recuerda haber pasado por el negocio 24 Marketplace en la Avenida Chardón, luego de visitar El Coolmado.

11. Durante su deposición, el Sr. Yareth García Ramírez no recuerdó cuántos tragos se tomó la noche del accidente.

12. El 5 de enero de 2024, Baleria Arocho Narváez, hija y nieta de los demandantes, declaró bajo juramento "que minutos antes del trágico accidente, y a menos de una milla de distancia, el Sr. García se encontraba en el establecimiento del demandado, 24 Marketplace, Inc., consumiendo bebidas alcohólicas".

13. Los demandantes nunca demandaron, ni reclamaron extrajudicialmente, a Yareth García Ramírez por los daños que les causó la muerte de Francisco Arocho Narváez.

14. Los demandantes nunca enviaron una reclamación extrajudicial a El Coolmado antes de radicar esta demanda.

15. El demandante Francisco Arocho Laboy admitió que directamente no realizó ninguna gestión para saber dónde Yareth García Ramírez había estado consumiendo bebidas alcohólicas.

16. La demandante Dorian Narváez Vélez admitió que la única gestión directa que ella realizó para saber dónde

---

[8] Véase, SUMAC TPI, Entrada 88.

Yareth García Ramírez había estado consumiendo bebidas alcohólicas fue hablar con los fiscales del caso criminal. Ellos tenían una idea de dónde había salido Yareth García Ramírez antes de causar el accidente, pero ella no recuerda cuál fue el lugar que le dijeron.

17. La demandante Carmen Laboy Cruz admitió que no realizó ninguna gestión para saber dónde Yareth García Ramírez había estado consumiendo bebidas alcohólicas.

18. Previo al 10 de enero de 2024, ninguno de los demandantes le pidió a Yareth García Ramírez una reunión o hablar con él, ni le preguntaron dónde había estado antes de causar el accidente.

19. La demandante Dorian Narváez Vélez alega que el 7 de noviembre de 2022 recibió un video de la red social Instagram, donde supuestamente, se veía a Yareth García Ramírez "visiblemente intoxicado" cuando llegó a El Coolmado. La parte demandante nunca produjo el supuesto video de Instagram, y tampoco es parte de la evidencia anunciada en este caso.

20. El 5 de noviembre de 2023 los demandantes presentaron una Demanda contra 24Marketplace, Inc. por los mismos hechos que alegan en esta demanda.

21. El 23 de enero de 2024 los demandantes desistieron de su demanda contra 24Marketplace, Inc. y el 24 de enero de 2024 el Tribunal dictó Sentencia desestimando la reclamación contra 24Marketplace, Inc.

22. 24Marketplace, Inc. no tiene relación con El Coolmado, LLC.

23. La dirección física de El Coolmado, LLC era Ave. Ponce de León 1037, San Juan, PR 00907 y su dirección postal era: PMB 371, 1353 Rd 19, Guaynabo, PR 00966.

24. El Emplazamiento por Edicto en este caso tenía una dirección que no es la de El Coolmado, LLC: 1855 Calle Loíza, San Juan, PR 00911. La parte demandante nunca envió, por correo certificado con acuse de recibo, copia de la demanda y del emplazamiento a El Coolmado, LLC tal y como exige la Regla 4.6 de Procedimiento Civil.

25. Yareth García Ramírez no es oficial, accionista o agente de El Coolmado, LLC.

26. Yareth García Ramírez no fue empleado de El Coolmado, LLC

27. Yareth García Ramírez no tiene relación alguna con El Coolmado, LLC.

28. En el caso de Baleria Arocho Narváez v. El Coolmado, LLC, Caso Civil Núm. 24-1069 (CVR), el Tribunal Federal, por voz de la Juez Camille Vélez Rivé determinó lo siguiente:

> "It is black letter law that tort claims under article 1536 are subject to the one-year statute of limitations provided by the Puerto Rico Civil Code. P.R. Laws Ann. tit. 31, § 10801 (2020).1 A cause of action under article 1536 accrues, and the prescriptive period begins to run, when the injured party knew or should have known of the injury and of the likely identity of the tortfeasor. Tokyo Marine & Fire Ins. Co. v. Pérez & Cia., de Puerto Rico, Inc., 142 F.3d 1, 3 (1st Cir. 1998); Colón Prieto v. Geigel, 115 D.P.R. 232, 243 (1984).

> The Complaint in this case clearly states that Plaintiff learned García had been at El Coolmado and not 24 Marketplace on January 10, 2024. Plaintiff brought this negligence case under the Puerto Rico tort statute and the landmark case of López v. Porrata Doria, 169 D.P.R. 135 (2006), which holds that a commercial establishment may be liable if it negligently served alcoholic beverages to an intoxicated person who later causes damage to another.
>
> Since Plaintiff only learned who that "commercial" tortfeasor was on January of this year, the Court finds the present case to be timely filed"[9]

Por su parte, el foro primario estableció que los siguientes hechos están en controversia:

1. Si Yareth J. García Ramírez consumió bebidas alcohólicas en el El Coolmado, LLC. el 6 de noviembre de 2022 previo al accidente que motivó la presentación de la demanda de epígrafe.

2. Si Yareth J. García Ramírez se encontraba visiblemente intoxicado mientras estuvo en las instalaciones de El Coolmado, LLC, de forma tal que el personal del establecimiento pudo advertir razonablemente su condición.

3. Si el personal de El Coolmado, LLC continuó sirviendo bebidas alcohólicas a Yareth J. García Ramírez mientras este se encontraba en estado de embriaguez manifiesta.

4. Si El Coolmado, LLC fue el último establecimiento visitado por Yareth J. García Ramírez antes del accidente de tránsito.

5. Si la intoxicación de Yareth J. García Ramírez fue la causa adecuada y próxima del accidente en el que falleció Francisco Arocho Narváez.[10]

Cónsono con estas determinaciones de hechos, el foro primario razonó que en el presente caso existían controversias que exigían una valoración probatoria y de credibilidad que no podían adjudicarse por la vía sumaria. En cuanto al argumento de la prescripción, el foro *a quo* expresó lo siguiente: "el foro toma nota de que esta controversia fue adjudicada previamente en un pleito relacionado ante el Tribunal de Distrito Federal. En esa instancia, se resolvió que la demandante no conoció la identidad del establecimiento comercial presuntamente responsable —El

---

[9] Véase, SUMAC TPI, Entrada 88, págs. 5-8.
[10] Véase, SUMAC TPI, Entrada 88, págs. 8-9.

Coolmado, LLC— hasta enero de 2024".[11] Como corolario de ello, concluyó que, a tenor con la teoría cognoscitiva del daño, la causa de acción no se encontraba prescrita, toda vez que la demanda en este caso se presentó en febrero de 2024, dentro del término dispuesto por ley.

Inconforme, el 2 de julio de 2025, el Peticionario presentó *Moción de Reconsideración.*[12] En esta, argumentó que ante la ausencia de evidencia de dos (2) elementos esenciales para la causa de acción de los Recurridos, a saber, la venta de alcohol y que dicha venta se concretaba mientras el señor García Ramírez estuviera visiblemente intoxicado, no se justificaba la necesidad de tener que celebrar un juicio en su fondo.

Por su parte, el 6 de julio de 2025, los recurridos presentaron *Oposición a la Moción de Reconsideración.*[13]. En esta sostuvieron que los elementos que debían probarse en la presente causa de acción presentaban el tipo de controversias fácticas que requieren evaluación en un juicio. Atendidos ambos escritos, el 7 de julio de 2025, el foro primario emitió y notificó *Resolución* en la que declaró *No Ha Lugar* la moción de reconsideración presentada por los peticionarios.[14]

Aún inconforme, el 1 de agosto de 2025, el Peticionario presentó el recurso de epígrafe en el cual formuló los siguientes señalamientos de error:

> Primer Error: Erró el TPI al aplicar la doctrina de cosa juzgada a la defensa de prescripción presentada por el Coolmado, LLC.
>
> Segundo error: erró el TPI al denegar la solicitud de sentencia sumaria por insuficiencia de prueba [y prescripción] debidamente fundamentada y presentada por el Coolmado, LLC.

---

[11] Véase, SUMAC TPI, Entrada 88, pág. 22.
[12] Véase, SUMAC TPI, Entrada 89.
[13] Véase, SUMAC TPI, Entrada 93.
[14] Véase, SUMAC TPI, Entrada 94.

Así las cosas, el 20 de agosto de 2025, esta Curia emitió *Resolución* en la cual se le concedió un término de diez (10) días a los Recurridos para que mostraran causa por la cual no debíamos expedir el auto de *certiorari*. Oportunamente y en cumplimiento con la orden emitida, el 25 de agosto de 2025, compareció mediante *Moción en Cumplimiento de Orden y Oposición a Expedición de Auto de Certiorari.* Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia objeto del recurso de epígrafe.

**II.**

***A. Certiorari***

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (4) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro

apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni en ausencia de parámetros. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023). La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari*. *Íd.* Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019). No obstante, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R. 52.1.

### B. Sentencia Sumaria

La sentencia sumaria es el mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y

económica de los litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio a fondo. *Soto y otros v. Sky Caterers,* 215 DPR___ (2025), 2025 TSPR 3, pág. 10; Véase, además, *BPPR v. Cable Media,* 215 DPR___ (2025), 2025 TSPR 1. La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, permite que, en un litigio, cualquiera de las partes le solicite al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra.* No obstante, para que una sentencia sumaria proceda, es necesario que la prueba que acompaña la solicitud de sentencia sumaria debe surgir preponderantemente la inexistencia de controversia sobre los hechos medulares del caso. *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y otros*, 216 DPR___ (2025), 2025 TSPR 78, pág. 9.

Para poder demostrar eficientemente la falta de controversia sobre hechos esenciales, el promovente de la sentencia sumaria debe: (1) exponer las alegaciones de las partes; y (2) desglosar en párrafos debidamente enumerados los hechos sobre los cuáles, a su entender, no hay controversia. Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3.

En *Meléndez González et al. V. M. Cuebas*, 193 DPR 100 (2015), el Tribunal Supremo estableció "el estándar específico" que debe utilizar este Foro al "revisar denegatorias o concesiones de Mociones de Sentencia Sumaria". A esos efectos, el Tribunal dispuso que:

> el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que

están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018).

Es decir, planteada una revisión de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia para resolver, por lo que debe evaluar las mociones presentadas en el foro primario y cumplir con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra,* al emitir su dictamen. *Meléndez González et al. v. M. Cuebas*, *supra.* "[L]a revisión del foro apelativo conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor". *Birriel Colón v. Econo y otros*, 213 DPR 80, 91-92 (2023) citando a *Meléndez González et al. v. M. Cuebas, supra.*

En tal sentido, como parte de nuestra función revisora, es nuestro deber evaluar todos los documentos que obren en el expediente de manera tal que, previo a determinar la procedencia de una solicitud de sentencia sumaria, se deba realizar un balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles. *BPPR v. Cable Media,* supra*, pág. 9 (citas omitidas). Cónsono con lo anterior, en el ejercicio de nuestra función revisora, estamos limitados a: (1) considerar los documentos que se presentaron ante el foro primario; (2) determinar si existe o no controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó correctamente. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 994 (2024).

Por otra parte, nuestra más Alta Curia ha definido el concepto hecho material de la siguiente forma: un hecho material o

esencial es "aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Consejo de Consejo Tit. v. Rocca Dev. Corp., et als.,* supra, 215 DPR___ (2025) 2025 TSPR 6, pág. 15. Por ende, la parte promovente tiene el deber de exponer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. *Soto y otros v. Sky Caterers,* supra, pág. 11.

Por su parte, la Regla 36.4 de Procedimiento Civil, *supra*, dispone que si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos. De la misma forma, el tribunal deberá establecer hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando así que los procedimientos ulteriores sean justos en el pleito. *Íd.* A tono con lo anterior, la precitada regla establece que, al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. *Íd.*

### C. *Cosa juzgada e impedimento colateral por sentencia*

La defensa de cosa juzgada es una que "persigue poner fin a los litigios luego de haber sido adjudicados de forma definitiva por los tribunales y, de este modo, garantizar la certidumbre y seguridad […]". *Presidential v. Transcaribe*, 186 DPR 263, 273 (2012) (Cita omitida). Esta defensa "solo cobra efecto si existe la más perfecta identidad de cosas, causas, las personas de los litigantes y la calidad con que lo fueron". *Beníquez et al. v. Vargas*

*et al.*, 184 DPR 210, 222 (2012) (Escolio omitido). Es decir, los requisitos para la aplicación de la doctrina son que:

> (1) [H]aya una primera sentencia válida, final y firme; (2) las partes, *en el primer litigio*, sean las mismas en el segundo; (3) *en ambos pleitos* se trate del mismo objeto o asunto; (4) en el *primer pleito* se haya pedido igual remedio que el que se pida en el segundo, y (5) las partes litiguen en la misma calidad en ambos pleitos. *SLG Szendrey-Ramos v. Consejo de Titulares,* 184 DPR 133, 155 (2011) (Cita omitida) (Énfasis suplido).

Por otro lado, la doctrina de cosa juzgada es valiosa y necesaria para la para la sana administración de la justicia. *Presidential v. Transcaribe, supra,* pág. 274. Ello pues, vela por el interés gubernamental de que se finalicen los pleitos y, además, se interesa en no someter a los ciudadanos a las molestias de tener que litigar dos veces una misma causa. *Íd.* No obstante, la aplicación de esta doctrina no procede de forma inflexible y automática cuando hacerlo derrotaría los fines de la justicia u otras consideraciones de orden público. *Íd.*

Por otra parte, una modalidad de la doctrina de cosa juzgada es el impedimento colateral por sentencia. *Presidential v. Transcaribe, supra,* pág. 276. "Ahora bien, el impedimento colateral se distingue de la doctrina de cosa juzgada en que para su aplicación no es necesario que se dé el requisito de identidad de causas". *Íd.,* págs. 276-277 (Énfasis suprimido).

> Esta figura opera cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final, y tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas. *SLG Szendrey-Ramos v. Consejo de Titulares, supra,* pág. 155 (Citas y comillas omitidas).

Sin embargo, esta no procede "cuando la parte contra la cual se interpone no ha tenido la oportunidad de litigar previamente el asunto y no ha resultado ser la parte perdidosa en el litigio anterior". *Presidential v. Transcaribe, supra,* pág. 277 (Escolio omitido) (Énfasis suplido). Por tanto, "no aplica a asuntos que

pudieron ser litigados y determinados en el primer caso y no lo fueron. Su aplicación se limita a aquellas cuestiones que, en efecto, fueron litigadas y adjudicadas". *Íd.* (Escolio omitido) (Énfasis suplido).

### D. Prescripción extintiva

La prescripción de las acciones es un asunto de derecho sustantivo y no procesal. *Landrau Cabezudo y otros v. La Autoridad,* 215 DPR___ (2025) 2025 TSPR 7 pág. 14. Esta figura jurídica persigue "evitar la incertidumbre de las relaciones jurídicas y castigar la inacción en el ejercicio de los derechos*."* *García Pérez v. Corp. Serv. Mujer,* 174 DPR 138, 147 (2008). Por ello, nuestro ordenamiento "parte de la premisa de que las reclamaciones válidas deben ejercerse oportunamente". *Oficina de Asuntos Monopolísticos del Departamento de Justicia y otro v. Abarca Health, LLC*, 215 DPR___ (2025) 2025 TSPR 23 pág. 17.

A esos fines, el Artículo 1189 del Código Civil de 2020, 31 LPRA sec. 9481, establece que "[l]a prescripción es una defensa que se opone a quien no ejercita un derecho o acción dentro del plazo de tiempo que la ley fija para invocarlo". A su vez, el aludido artículo añade que "[l]as acciones prescriben por el mero lapso del tiempo fijado por ley". *Íd.* Por otro lado, en las causas de acción por daños, "los términos prescriptivos comienzan a transcurrir desde que el agraviado tuvo o debió tener conocimiento del daño y estuvo en posición de ejercer su causa de acción". *Landrau Cabezudo y otros v. La Autoridad*, supra.

Cabe aclarar, que cuando un perjudicado tenga una causa de acción en daños contra varios demandados, "deberá interrumpir la prescripción en relación con cada cocausante por separado, dentro del término de un año establecido [...] si interesa conservar su causa de acción contra cada uno de ellos. *Fraguada Bonilla v. Hosp. Aux. Mutuo,* 186 DPR 365, 389 (2012); *Maldonado Rivera v.*

*Suarez,* 195 DPR 182, 210 (2016). Por ende, "en las obligaciones solidarias que provengan de coacusación del daño, cuando el acreedor reclama de uno de los deudores solo la parte que le corresponde, no se interrumpe por ello la prescripción respecto a los otros codeudores". Artículo 1189 del Código Civil de 2020, 31 LPRA sec. 9054.

En armonía con lo anterior, nuestro ordenamiento jurídico reconoce que, a diferencia de la caducidad, la prescripción sí permite interrupción. Existen tres (3) maneras de interrumpir la prescripción, a saber: (1) la presentación de la acción judicial correspondiente, (2) por una reclamación extrajudicial hecha por el acreedor, dirigida al deudor, o (3) el reconocimiento de la obligación por parte del deudor. Producida la interrupción, comienza nuevamente a transcurrir el cómputo del plazo. Art. 1197 del Código Civil de 2020, 31 LPRA sec. 9489. Véase, además, *Ross Valedón v. Hosp. Dr. Susoni et al.,* 213 DPR 481, 496 (2024). En ausencia de un acto interruptor, el titular de una causa de acción pierde su derecho a instalarla si no la ejerce en el plazo que establece la Ley. *Conde Cruz v. Resto Rodríguez,* 205 DPR 1043, 1067 (2020).

### III.

Expuesto el marco jurídico y ponderados los argumentos presentados por las partes, resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. Al amparo de los criterios que guían nuestra discreción, no intervendremos en la determinación recurrida. En el presente caso, el Peticionario no ha demostrado que el foro de instancia se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho. Tampoco constató que el abstenernos de interferir en la determinación recurrida constituiría un fracaso irremediable de la justicia en esta etapa de los

procesos. Por lo cual, somos del criterio que en el presente caso procede que se deniegue el recurso de *certiorari* de epígrafe.

Nuestra determinación de no intervenir en los méritos de la decisión recurrida en estos momentos no constituye una adjudicación de la controversia existente entre las partes ni prejuzga el asunto planteado por estas.

**IV.**

Por los fundamentos anteriormente expuestos, **denegamos** el recurso de epígrafe.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones